**MORGAN, LEWIS & BOCKIUS LLP**
(A Pennsylvania Limited Liability Partnership)
502 Carnegie Center
Princeton, NJ  08540-6241
609.919.6600

Attorneys for Plaintiff
Givaudan Fragrances Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GIVAUDAN FRAGRANCES CORPORATION,**<br><br>　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**JAMES KRIVDA**<br><br>　　　　**Defendant.** | CIVIL ACTION<br>DOCKET NO. _____<br><br><br>DOCUMENT FILED<br>ELECTRONICALLY<br><br><br><br>VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |

　　　　Plaintiff Givaudan Fragrances Corporation ("Givaudan" or "the Company"), by any through its counsel, Morgan, Lewis & Bockius LLP, brings this civil action against Defendant James Krivda ("Krivda"), and in support thereof relies upon the attached Verification and Declaration of Cosimo Policastro and Declaration of Jane Garfinkel, and avers as follows:

　　　　1.　　Givaudan is in the business of creating and manufacturing fragrances for both consumer products and the fine fragrance industry.  Defendant James Krivda ("Krivda") is a former employee who now works for a direct competitor of Givaudan, MANE International. Givaudan has learned that Krivda, without authorization, for no conceivably legitimate reason, on the eve of announcing his resignation, accessed from the Company's secret, protected, formula database, printed, and, upon information and belief, removed from the premises more than **650** of Givaudan's fragrance formulas.  The value of these highly prized formulas cannot be

overstated. Givaudan's annual sales can be measured in the hundreds of millions of dollars, and its unique fragrance formulas are the lifeblood of its entire business. This is an action for injunctive and legal relief seeking damages and a Preliminary Injunction compelling Krivda to return the stolen formulas and any other Givaudan property, to refrain from using or disseminating Givaudan's trade secrets, and to disclose the persons to whom he has disclosed this information, and what use he has made of this information. In addition, Givaudan seeks to compel Krivda to submit to expedited discovery.

## PARTIES

2. Givaudan is a corporation organized under the laws of the State of Delaware that maintains manufacturing plants and offices in various locations around the world. Givaudan's principal place of business is at 300 Waterloo Valley Road, Mount Olive, New Jersey 07828.

3. Defendant James Krivda is an individual who, upon information and belief, resides at 18 Dogwood Circle, Pine Brook, New Jersey 07058.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the claims for relief arising under the Computer Fraud and Abuse Act, 18 U.S.C. §1030 *et seq.*, pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because both parties reside in this district.

## SUMMARY

6. Upon his hire, Givaudan executed an unambiguous Employee Confidentiality Agreement ("the Agreement"), attached to Verification and Declaration of

Cosimo Policastro ("Policastro Decl.") as Exhibit A.  Under the Agreement, Krivda's obligations are unambiguous: he must not remove Givaudan's trade secrets and confidential and proprietary information from the premises; he must maintain the confidentiality of Givaudan's trade secrets and confidential and proprietary information both during and after employment; and he may not use Givaudan's trade secrets and confidential and proprietary information to benefit himself or any other person or organization either during or after his employment with the Company.

7. Nonetheless, Krivda has flagrantly breached these contractual commitments.  On April 18, 2008, Krivda announced that he was resigning from the Company to take a position with one of Givaudan's competitors, MANE.  During the three days immediately preceding his resignation (April 16, 17 & 18), Krivda printed and apparently removed from the premises over 650 proprietary fragrance formulas.  This case seeks to prevent Krivda from further breaches of his contractual and common law obligations to maintain the secrecy of Givaudan's trade secrets and confidential and proprietary information; to compel Krivda to return all of Givaudan's trade secrets and confidential and proprietary information; and to recover all damages that Givaudan suffers by virtue of Krivda's breaches and otherwise tortious and unlawful actions.

## FACTUAL BACKGROUND

### A.   GIVAUDAN

8. Among other things, Givaudan creates and manufactures unique and innovative products for the fine fragrances and consumer products industries.  As relevant to this matter, Givaudan develops fragrances that its customers use in their products.  Givaudan's tailor-made fragrance compounds are a differentiating key element for its customers' successful products.

9. Givaudan's success and reputation are attributable to, among other things,

its ability to consistently deliver new scents that generate high levels of consumer acceptance and brand loyalty in diverse product categories.

10. Givaudan's success and reputation are also based, in substantial part, on commercially valuable confidential and proprietary business information developed at great effort and expense over many years and which is not publicly known or readily ascertainable. Such confidential and proprietary information includes, but is not limited to, Givaudan's product formulas.

11. Givaudan actively protects its trade secrets and confidential and proprietary business information in numerous ways. Givaudan requires its employees (including Krivda) to sign confidentiality agreements requiring them to promise to maintain the confidentiality of Givaudan's trade secrets and confidential and proprietary information. All of Givaudan's employees also receive a copy of Givaudan's Business Practices guide, which clearly states that all material containing any secret or confidential idea or information, including all electronic data, are company property and may not be removed from the premises or disclosed to any third party or used for the personal benefit of any employee. See Policastro Decl. Exh. B.

12. In addition, Givaudan strictly limits access to its facilities, restricts removal of property from its premises and limits photography on its premises. Computers are password protected and access to proprietary software packages is restricted to only certain persons on a need-to-know basis. In particular, Givaudan goes to great lengths to restrict access to its formulas, by encrypting and limiting access to only a select group of employees. In addition, remote computer access to documents other than formulas is strictly curtailed, with access limited only to Company-issued laptops and only with specially-installed remote access

4

software intended to provide a secure working environment. There is no remote access for the formula database and, therefore, a perfumer can only access formulas when on Givaudan premises.

13. Krivda's downloading and printing out of such massive quantities of Givaudan's most precious trade secrets, especially on the eve of his departure for a direct industry competitor, strikes at the very core of Givaudan's business operation. Such conduct is unlawful and unethical.

**B.   KRIVDA'S EMPLOYMENT AGREEMENT**

14. Defendant Krivda was hired by Givaudan as Vice President, Perfumery on or around December 13, 2004, with a handsome wage and benefits package worth hundreds of thousands of dollars per year.

15. In exchange for his highly lucrative compensation and benefits package, Krivda agreed to maintain the secrecy and confidentiality of Givaudan's trade secrets and confidential and proprietary information and to refrain from removing them from the premises.

16. The relevant provisions of Krivda's Employment Agreement provide as follows:

> 3.   Non-disclosure of secret or confidential ideas or information
> EMPLOYEE shall not, either during or after the term of employment by GIVAUDAN, disclose to any person or organization other than GIVAUDAN, or utilize for the benefit or profit of EMPLOYEE or any other person or organization other than GIVAUDAN, any secret or confidential idea or information developed by EMPLOYEE for GIVAUDAN or obtained while EMPLOYEE is in GIVAUDAN'S employ by EMPLOYEE from GIVAUDAN, its consultants or affiliates, except as may be authorized by GIVAUDAN. Included in the foregoing, by way of illustration and not limitation, are such items as research projects, findings or reports, business plans, [and] formulas….
>
> 6.   Material prepared by EMPLOYEE for GIVAUDAN
> The following shall be the property of GIVAUDAN exclusively:

5

      a. Any material kept, prepared or received by GIVAUDAN in the course of or in order for EMPLOYEE to perform assigned duties for GIVAUDAN; and

      b. Any material containing any secret or confidential idea or information, if such idea or information was

          i. developed by EMPLOYEE for GIVAUDAN, or

          ii. obtained while in GIVAUDAN'S employ by EMPLOYEE from GIVAUDAN, its consultants or affiliates.

Included in the foregoing, by way of illustration and not limitation are such items as *formulas*….

7. <u>Removal and return of GIVAUDAN property</u>
EMPLOYEE shall not keep elsewhere than on GIVAUDAN premises, nor remove therefrom, any GIVAUDAN property, except and only so long as may be required for the performance of assigned duties for GIVAUDAN.  Unauthorized possession of GIVAUDAN property, in particular, formulas, may lead to disciplinary action, up to and including termination.  In the event of termination of employment with GIVAUDAN, EMPLOYEE shall immediately return to GIVAUDAN any GIVAUDAN property in EMPLOYEE'S possession, under EMPLOYEE'S control or removed by EMPLOYEE from GIVAUDAN'S premises.

17. The foregoing covenants are governed and construed in accordance with the laws of the State of New Jersey.

## C. **KRIVDA'S EMPLOYMENT AND RESIGNATION FROM GIVAUDAN**

18. As Vice President, Perfumery, Krivda's job responsibilities included creating fragrance formulas for Givaudan's clients**.**

19. Although his employment allowed him computer access to Givaudan's trade secret formulas, it was not within the scope of Krivda's job responsibilities or his authorization to access hundreds of proprietary formulas at a time, particularly not those developed by other perfumers, especially after Krivda already had accepted employment with a competitor.

20. Krivda gave notice of his intent to resign from Givaudan on April 18, 2008, and informed Givaudan that he had accepted a position with one of Givaudan's competitors, MANE.

21. It is indisputable that Givaudan and MANE are direct competitors in the marketplace for fragrances.

22. On April 16, 17 and 18, Krivda printed from Givaudan's secure and protected formula database, approximately 650 proprietary fragrance formulas. Of this enormous number, a significant number were developed by other perfumers.

23. Krivda has no legitimate business reason for having printed out this massive number of formulas on the eve of his departure and after he had already accepted employment with a competitor. Indeed, access to this massive number of formulas was distinctly outside the scope of his job responsibilities throughout his employment with Givaudan. Krivda never accessed this volume of formulas in the normal course of his job. By way of example, between November 2007 and April 2008, in the course of his daily responsibilities, on average Krivda accessed only 15 formulas per day.

24. During the five day period after Krivda gave his notice, between April 21 and April 25, he again accessed and printed an excessive number of proprietary formulas—averaging approximately 24 per day – all at a time when he was supposed to be winding down his work, not ramping it up.

25. Krivda's last day employed by Givaudan was May 2, 2008.

D. **DISCOVERY OF KRIVDA'S FRAUDULENT MISAPPROPRIATION OF THE FORMULAS**

26. On or about May 28, 2008, during a routine review of the formula database, the technology department at Givaudan discovered that Krivda had engaged in highly

suspicious activity prior to his departure from the Company.

27. At the time of this discovery, Senior Vice President and General Counsel of Givaudan, Jane E. Garfinkel ("Garfinkel"), sent Krivda a letter demanding that he explain his actions. The letter requested that Krivda (1) explain why he had accessed the proprietary formulas, (2) explain what he did with the hard copies of the printed formulas; (3) notify Givaudan if he had downloaded or emailed any trade secrets to an external computer or internet account; and (4) immediately return to Givaudan any and all Givaudan property in his possession or transferred to others.

28. On the evening of May 30, 2008, Krivda faxed to Garfinkel a letter saying that he could not "digest" her letter, and requesting time to consult legal counsel before responding. Around this date, and presumably in response to Garfinkel's demand, Krivda also stopped by Givaudan's offices in New York and told Cosimo Policastro, the Executive Vice President of Fine Fragrances at Givaudan, that he had no formulas in his possession as he had either shredded or left behind the formulas he had printed before his resignation. Krivda did however return to Mr. Policastro some of the material he had removed from Givaudan premises including a confidential marketing presentation containing the trade secrets of Givaudan. However, he did not return a single formula which he had printed.

29. On June 3, 2008, Garfinkel responded by letter to Krivda, again requesting that he explain his unauthorized access of Givaudan's proprietary formulas and demanding that he immediately return Givaudan's property to the Company.

30. On June 6, 2008, Krivda responded to Garfinkel by letter, stating that he was still in the process of obtaining counsel and denying that he had any proprietary information in his possession. Krivda, prior to obtaining counsel, claimed that he had thrown away,

shredded, given to another perfumer, or left in his office any trade secrets he printed before he resigned from Givaudan.

31. On June 10, 2008, Garfinkel again wrote a letter to Krivda requesting an explanation for his unauthorized access of enormous amounts of Givaudan's trade secrets and confidential and proprietary information before his departure from Givaudan. In addition, Garfinkel asked Krivda for specific details regarding his claim that he discarded or gave away the trade secrets printed from Givaudan's computer system so that Givaudan could verify those representations.

32. Krivda did not respond to this letter until June 26, for over two weeks, when his counsel sent a letter to Ms. Garfinkel denying that Krivda had removed the formulas from the premises, but again failing to explain Krivda's unauthorized access or to answer Garfinkel's request for details about Krivda's alleged disposal of the printed formulas.

33. Ms. Garfinkel has repeatedly attempted to obtain further assurances from Krivda, through his counsel, and answers to additional questions, such as where Krivda threw away or shredded the formulas and to what other perfumer he had provided the formulas. Neither Krivda nor his counsel has ever answered those questions.

34. After an internal investigation, it was determined that Krivda did not throw away, shred, give to another perfumer, or leave in his office the formulas which he accessed and printed without authorization.

35. Given the massive numbers of the formulas accessed and printed before and after he notified Givaudan that he accepted a position with a competitor, the fact that he did not need printed copies of over 650 formulas to perform his few remaining Givaudan responsibilities, that there is no evidence that he shredded them on Givaudan premises or gave all

of them to another perfumer, that he failed after numerous inquiries to justify any of his conduct or support his statements with any evidence, and that he went to work for a direct competitor, there is overwhelming evidence that Krivda has stolen Givaudan's formulas from its offices.

36. The formulas misappropriated by Krivda are worth millions of dollars. Krivda's fraudulent misappropriation of these trade secrets will cause significant financial loss if he is allowed to retain Givaudan's trade secrets and confidential and proprietary information or to use the formulas either for his own or another person's/organization's benefit.

37. Without enforcement of Krivda contractual, common law and statutory obligations, Givaudan could suffer massive losses and could be denied a level playing field in the marketplace if any of its competitors has stolen, proprietary, valuable information with which it can compete against Givaudan.

### COUNT ONE: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 *et seq.*

38. Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

39. The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* permits any person who suffers damage or loss by reason of any activity prohibited by the Act to bring a civil action for damages and injunctive relief.

40. On April 16, 17 and 18, as well as April 21-25, Krivda knowingly and with intent to defraud, accessed Givaudan's protected computer network—and by means of such conduct, defrauded Givaudan and obtained for himself information of substantial value— the trade secrets and confidential and proprietary formulas therein. At the time Krivda began accessing and printing the formulas, Krivda knew, and failed to disclose to Givaudan, that he had accepted employment with a competitor.

41. Krivda's access to Givaudan's protected computer system was in excess of his authorized access, particularly once he accepted employment with a competitor. Krivda's Agreement as well as Givaudan's Business Practices guide, which Krivda received upon employment, clearly state that all material containing any secret or confidential idea or information, including all electronic data, are company property and may not be removed from the premises or disclosed to any third party or used for the personal benefit of any employee.

42. Upon information and belief, when confronted by Givaudan with the evidence that he had accessed and printed out 650 formulas shortly prior to his departure, Krivda falsely misrepresented in a June 6, 2008 letter to Ms. Garfinkel that he had discarded, shredded and/or returned all such formulas prior to his departure.

43. As a result of Krivda's conduct, Givaudan has sustained damage or loss of not less than $5,000.00, including but not limited to losses sustained in responding to Krivda's actions, investigating Krivda's actions and taking remedial steps to prevent Krivda's further offenses.

44. By reason of the acts alleged herein, Givaudan has been damaged in an amount to be determined at trial.

45. Also by reason of the acts alleged herein, Givaudan is entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information and to prevent further use and/or dissemination thereof.

### COUNT TWO: BREACH OF KRIVDA'S EMPLOYEE CONFIDENTIALITY AGREEMENT

46. Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

47. In connection with, and as a condition of, his employment by Givaudan,

Krivda executed a valid and enforceable Employee Confidentiality Agreement with Givaudan.

48. The Employee Confidentiality Agreement prohibits unauthorized possession of Givaudan's property and prohibits the unauthorized removal of any Givaudan property, *particularly formulas*, from the premises of the Company.  It further requires that in the event of termination of employment with Givaudan, Krivda must immediately return to Givaudan any and all company property in his possession.

49. The Employee Confidentiality Agreement also prohibits unauthorized disclosure of Givaudan's trade secrets to any third party, or use of such proprietary information for Krivda's own benefit.  By way of example, the Agreement specifically states that proprietary formulas may not be disclosed to third parties or utilized for the employee's personal benefit.

50. The Employee Confidentiality Agreement also explicitly states that all documents, files, and formulas kept by the Company, whether developed by Krivda or obtained by Krivda in the course of his employment with Givaudan, are the exclusive property of the Company.

51. Krivda has breached the terms of his Employee Confidentiality Agreement with Givaudan by his unauthorized access of Givaudan's proprietary formulas once he had accepted employment with a competitor,, by removing such formulas from the Company's premises, and by failing and continuing to refuse to return such formulas to the Company all with the intent of using these trade secrets for his own benefit and/or the benefit of others.

52. By reason of the acts alleged herein, Givaudan has been significantly damaged, the precise amount to be determined at trial.

53. By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information

and to prevent further use and/or dissemination thereof and further herein to Givaudan.

## COUNT THREE: MISAPPROPRIATION OF TRADE SECRETS

54. Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

55. The information contained in computer files accessed and printed by Krivda is confidential and proprietary and constitutes trade secrets belonging to Givaudan.

56. Givaudan has expended substantial resources in developing its trade secrets for its exclusive benefit, and the information provides Givaudan with an advantage over its competitors. Givaudan's trade secrets derive economic value from the fact that they are neither generally known nor readily ascertainable by proper means by any third parties.

57. Givaudan does not disclose its trade secrets to its competitors and has taken all reasonable efforts to protect their confidentiality, by means including, but not limited to, having its employees sign confidentiality agreements and maintaining security procedures protecting its trade secrets.

58. Givaudan communicated its trade secrets to Krivda in confidence and Krivda knew that Givaudan intended its trade secrets to remain confidential.

59. By accessing and printing the formulas after he had secretly accepted employment with a competitor, and removing Givaudan's trade secrets from the Company's premises, Krivda knowingly violated the law and company policies that were intended to protect Givaudan's trade secrets.

60. Krivda misused Givaudan's trade secrets by accessing them without authorization, printing them and removing them from the Company's premises.

61. On information and belief, Krivda has used or intends to use Givaudan's trade secrets to compete with Givaudan and/or to enable other persons or entities to better

compete with Givaudan.

62. As noted above, given that Krivda had already accepted employment with a competitor, any access to, use, removal, or dissemination of Givaudan's formulas is in knowing violation of Givaudan's efforts to maintain the confidentiality of its trade secrets.

63. Krivda's actions as set forth herein constitute willful and malicious misappropriation of Givaudan's trade secrets.

64. By reason of the acts alleged herein, Givaudan has been significantly damaged, the precise amount to be determined at trial.

65. By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information and to prevent further use and/or dissemination thereof and further harm to Givaudan.

### **COUNT FOUR: CONVERSION**

66. Givaudan repeats and realleges the forgoing paragraphs as if fully set forth herein.

67. At all times, Givaudan retained all right, title, and interest in the trade secrets and confidential and proprietary information taken by Krivda.

68. Krivda knowingly, dishonestly, and intentionally took and retained Givaudan's trade secrets and confidential and proprietary information without authorization.

69. Krivda's acts constitute a knowing, unlawful and intentional conversion of trade secrets and confidential and proprietary information for Krivda's economic benefit and to the economic detriment of Givaudan.

70. As described above, Krivda has refused Givaudan's repeated demands to return the formulas that he took from Givaudan.

71. As a direct and proximate result of this conversion, Givaudan has been

significantly damaged, the precise amount to be determined at trial.

      72.     By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information and to prevent further use and/or dissemination thereof.

### COUNT FIVE: REPLEVIN

      73.     Givaudan repeats and realleges the forgoing paragraphs as if fully set forth herein.

      74.     As set forth above, Krivda has illegally converted Givaudan's trade secrets and confidential and proprietary information.

      75.     Krivda does not have the right to possession of such trade secrets and is obligated to return the stolen trade secrets and confidential and proprietary information to Givaudan.

      76.     Givaudan has suffered, and will continue to suffer, irreparable harm as a result of Krivda's possession of Givaudan's property.

      77.     Unless Krivda is compelled by an appropriate preliminary injunction to return Givaudan's property, his conduct will continue to cause Givaudan irreparable harm.

      WHEREFORE, Givaudan prays for judgment as follows:

      a.     That Krivda be ordered preliminarily and permanently to return to Givaudan all trade secrets and other confidential and proprietary information in his possession or control;

      b.     That Krivda be preliminarily and permanently enjoined from using, transmitting, or disclosing any Givaudan trade secrets and confidential and proprietary information including, but not limited to, any and all formulas;

      c.      That Krivda be ordered to disclose the names and addresses of any and all persons to whom he has disclosed Givaudan's trade secrets and other confidential and proprietary information including, but not limited to, any and all formulas;

      d.      That Krivda be ordered to disclose to the Court the location of the formulas removed from Givaudan's premises since they time they were printed, or how and when they were destroyed;

      e.      That Krivda be ordered to disclose for what purposes and projects he has used Givaudan's trade secrets and confidential and proprietary information including, but not limited to, any and all formulas;

      f.      That Krivda submit to expedited discovery

      g.      That Givaudan be awarded compensatory damages, punitive damages, pre-judgment and post-judgment interest, attorneys' fees, and costs; and

      h.      That Givaudan be awarded such other and further necessary and proper relief as the Court may deem just and proper.

Respectfully submitted,

Morgan, Lewis & Bockius LLP
Attorneys for Plaintiff Givaudan Fragrance
Corporation

/s/ Michelle S. Silverman

_____

Richard G. Rosenblatt
Michelle Seldin Silverman

Dated: September 3, 2008

## JURY TRIAL DEMAND

Plaintiff Givaudan demands trial by jury on all issues so triable.

                              MORGAN, LEWIS & BOCKIUS LLP
                              Attorneys for Plaintiff
                              Givaudan Fragrance Corporation

                              /s/ Michelle S. Silverman
Dated: September 3, 2008          Richard G. Rosenblatt
                              Michelle Seldin Silverman


## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I hereby certify that the matter in controversy here is not the subject of any other action pending in any other court, or of any pending arbitration or administrative proceeding.

                              Respectfully submitted,

                              Morgan, Lewis & Bockius LLP
                              Attorneys for Plaintiff Givaudan Fragrance
                              Corporation

                              /s/ Michelle S. Silverman
                              Richard G. Rosenblatt
                              Michelle Seldin Silverman

Dated: September 3, 2008