NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                          :
GIVAUDAN FRAGRANCES              :
CORPORATION,                            :                Civil Action No.  08-cv-4409 (PGS)
                                          :
          Plaintiff,                      :
                                          :
                    v.                    :                        **OPINION**
                                          :
JAMES KRIVDA,                          :
                                          :
          Defendant                      :
_____:


**SHERIDAN, U.S.D.J.**

This matter comes before the court on Plaintiff, Givaudan Fragrance Corporation's

(Givaudan) motion to dismiss Defendant, James Krivda's (Krivda) counterclaim pursuant to Fed.

R. Civ. P. 12(b)(6).

**Statement of Facts and Procedural History**

On September 3, 2008, Givaudan filed a verified complaint alleging five causes of action

against Krivda, including violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C.

§ 1030, *et seq.*; breach of contract; misappropriation of trade secrets; conversion; and replevin.  In

response, Krivda filed an amended answer and counterclaim for defamation of character.

Krivda has worked in the fine fragrance industry for nearly 25 years.  He was employed as

a perfumer by Givaudan, a manufacturer of fragrances for consumer products and the fine fragrance

industry from January 2005 though May 2, 2008, in Givaudan's New York City offices.  All of

Givaudan's fragrance formulas are considered confidential and proprietary information, and the company requires its employees to sign confidentiality agreements, limits the access to its facilities and restricts removal of property from its premises.   Krivda signed such an Agreement in which he promised to protect the integrity of Givaudan's trade secrets, and to keep Giviaudan's property on Givaudan premises.

On or about April 18, 2008, Krivda informed Givaudan that he was resigning and that he had an offer of employment with MANE International, one of Givaudan's competitors.  After leaving Givaudan on May 2, 2008, Mr. Krivda became employed as a perfumer for MANE in MANE's New York offices.

On or about May 28, 2008, Givaudan allegedly discovered that Krivda had engaged in suspicious activity prior to his departure from the company.  Plaintiff claims that on April 16, 17 and 18, 2008, Krivda had admittedly printed from Givaudan's secure formula database, 537 fragrance formulas, 85 of which were created by other perfumers.  Plaintiff further contends that during the five days after Krivda gave his notice, between April 21 and April 25, Krivda continued to access and print 24 proprietary formulas per day from the Givaudan database.  This information was composed of the following: 1) formulas created by Krivda; 2) formulas created by other perfumers, but upon which Krivda may have provided some assistance; 3) so-called 'head-space' analyses prepared by a world famous Givaudan perfumer; 4) other commercialized fragrances worth millions of dollars individually; 5) gas chromatographies, which are scientific interpretative analyses of fragrance products performed by Givaudan employees; and 6) at least one formula for a proprietary ingredient developed by Givaudan.

Plaintiff claims that when Krivda announced his resignation, he stayed late on Friday, April 18, 2008, to print out more formulas.  Plaintiff also points out that "although Krivda testified that he needed these additional formulas to perform his remaining responsibilities for Givaudan, he further admitted that he had no intention to, nor did he, work over the weekend on anything related to the formulas he printed Friday evening or anything else for that matter."

Krivda explained why that he printed out all these formulas for such things as composing an internal announcement at MANE regarding his employment (Krivda refers to these as "wins")[1], and for "trend analyses."  Krivda also contends that he shredded all the print outs, and he cannot identify anyone who may have seen him do this.

On May 28, 2008, Jane Garfinkel, Senior Vice President and General Counsel of Givaudan, sent a letter from her Ohio office to Krivda at his home in New Jersey asking why he had an "excessive number" of Givaudan formulas in the days surrounding his resignation, and demanded a response by noon on May 30, 2008.  Ms. Garfinkel threatened to advise MANE of Krivda's "copying and removal from Givaudan's premises of Givaudan proprietary formulations and other trade secrets and confidential information."

On May 30, 2008, Krivda responded to the letter by advising that he would need additional time to respond and to consult legal counsel.  On June 3, 2008, Ms. Garfinkel from Ohio responded to Krivda in New Jersey with a letter in which she informed him that as a Givaudan employee, he was bound by Section 156.30 of the New York Penal Code,  dealing with the unlawful duplication of computer data.  Ms. Garfinkel concluded by saying that if Krivda "did not have, in every respect

---

[1] A perfumer is generally awarded a "win" when a fragrance he creates is bought by a customer and commercialized for sale.

acceptable to Givaudan, a satisfactory resolution of this matter by 9:00 a.m. on Friday June 6," Givaudan would "take whatever steps are necessary to protect property, tangible and intangible of the company, including informing your new employer of your activities . . . ."

On June 6, 2008, Krivda responded from New Jersey, stating that "[a]ny formulas that may have been printed during my employment at Givaudan were either thrown away, shredded, given to other perfumers or left in my office."  On June 10, 2008, Ms. Garfinkel sent a letter to Krivda in New Jersey asking that he provide information regarding where he had allegedly discarded the formulas, when and where he had shredded them, where in his office he left them and to whom does he claims to have given them. She copied Michael Mane, the president of MANE USA, Inc., at Mane's office in Demarest, New Jersey.  As Counsel for Krivda, McCarter and English in Newark responded on June 26, 2008 by stating that it was Krivda's position that he had either shredded the formulas, thrown them away or given to them to other perfumers.

It is the contents of the June 10 letter that forms the basis for Krivda's counterclaim for defamation of character.  In it, Garfinkel states the following:

> 1.  Why did you print and remove from Givaudan's premises over 700 Givaudan formulas three days prior to, and two days after, your resignation?
>
> . . . .
>
> Unless and until we receive detailed, complete and credible responses to [our] questions, *we only can assume* that you have misappropriated . . . information from Givaudan, that you do not intend to return that information, and that you have used or intend to use that information to raid Givaudan's customers and otherwise unfairly to compete with Givaudan.
>
> . . . .

> In the continued absence of any satisfactory explanations for your conduct, *we only can presume* that you have engaged, and continue to engage, both for your own personal gain and for the benefit of your new employer, in the misappropriation of Givaudan's trade secrets and other unlawful activity.  Therefore, by this letter we also hereby demand that you and Mane immediately take all appropriate measures to remedy this flagrant misconduct including, at the very minimum, by : (1) returning to Givaudan all of Givaudan's formulas (including all copies) and certifying that all electronic versions have been permanently deleted from your and Mane's databases; (2) returning all other Givaudan confidential documents and other materials in your and Mane's possession; and (3) otherwise ceasing the use of any Givaudan confidential and proprietary information for any purpose . . . .

(Emphases added).  These paragraphs were surrounded by references to the assertion of Givaudan's legal rights and remedies.  Krivda claims that these statements are defamatory, and that they constitute libel *per se*.

**Discussion**

Givaudan brings a motion to dismiss Krivda's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the above referenced statements are not, as a matter of law, defamatory, and that even if they were defamatory, such statements are protected under the New Jersey litigation privilege.  Krivda argues in response that New York law should apply here, and that under New York law, the litigation privilege does not protect these types of statements.  Each argument will be addressed in turn.

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  *Iqbal*, 129 S. Ct. at 1950.  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp*., 223 F.3d 165, 173 (3d Cir. 2000), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149 (2001). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949;  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).  The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .   Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted); *see also Iqbal*, 129 S. Ct. at 1949-50.

Conflict of Laws Issue

The first issue is whether New York or New Jersey law should apply to Krivda's defamation claim.  In general, courts that "sit in diversity . . . are bound to follow the substantive law of the

forum, including the forum's choice-of-law rules." *Robeson Indus. Corp. v. Hartford Accident & Indem. Co.*, 178 F.3d 160, 165 (3d Cir. 1999) (internal citations omitted). As such, this Court must apply New Jersey choice of law rules. "New Jersey's rule applies a flexible 'governmental-interest' standard, which requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation." *Gantes v. Kason Corp.*, 679 A.2d 106, 109 (N.J. 1996).

"Under that analysis, the determinative law is that of the state with the greatest interest in governing the particular issue." *Veazey v. Doremus*, 510 A.2d 1187, 1189 (N.J. 1986). This is a two-step inquiry. First, the court must "determine whether a conflict exists between the law of the interested states." *Id.* Conflicts are to be determined individually "on an issue-by-issue basis." *Id.* Where the court determines that a conflict of laws exists, the second step in the inquiry is "to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Id.* In making this determination, the court must also decide whether "a state's contacts are . . . related to the policies underlying its law." *Id.* If not, then the state in question does not have "an interest in having its law apply." *Id.* at 1189-90. This is a qualitative inquiry, requiring the court to determine the nature of the state's contacts before deciding the issue of whether a particular state's law should apply. *Id.*

Here, as to the first prong of the analysis, there does not appear to be a conflict between New York and New Jersey law as to the elements of a defamation claim in libel. *Compare*, *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 177 (2d Cir. 2000) (quoting *Kimmerle v. New York Evening Journal*, 186 N.E. 217, 218 (N.Y. 1933) *and Golub v. Enquirer/Star Group, Inc.*, 681 N.E.2d 1282, 1283 (N.Y. 1997)), *with Mayflower Transit, L.L.C. v. Prince*, 314 F. Supp. 2d 362, 372 (D.N.J.

2004) *and Romaine v. Kallinger*, 537 A.2d 284, 287 (1988)).

The only significant difference between New York and New Jersey law is whether the absolute litigation privilege applies. Under the common law of New Jersey, the litigation privilege "insures that '[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability.'" *Rickenbach v. Wells Fargo Bank, N.A.*, 2009 U.S. Dist. Lexis 52760, at *30 (D.N.J. June 22, 2009) (quoting *Peterson v. Ballard*, 679 A.2d 657, 659 (N.J. Super. Ct. App. Div. 1996)). The rationale for the privilege "is to allow parties to such proceedings 'unfettered expression critical to advancing the underlying government interest at stake in those settings.'" *Id.* (quoting *Peterson*, 679 A.2d at 659-60 ). This privilege does not merely protect statements made in the courtroom, but has been extended "'even to statements made by attorneys outside the courtroom, such as in attorney interviews and settlement negotiations.'" *Id.* (quoting *Loigman v. Twp. Comm. of Middletown*, 889 A.2d 426, 438 (N.J. 2006)).

As a result, in order to determine whether the privilege applies to a given communication or statement, the court must examine whether (1) it was "made in judicial or quasi-judicial proceedings"; (2) it was made "by litigants or other participants authorized by law"; (3) it was made in order "to achieve the objects of the litigation"; and (4) the communication has "some connection or logical relation to the action." *Id.* at *30-31 (quoting *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995)). This is a question of law for the court to determine. *Id.* at *31.

Under New York, the litigation privilege is more narrowly viewed. It does not encompass pre-litigation statements. *See Gold v. Intersoft Corp.*, 489 N.Y.S. 2d 660, 661-62 (Sup. 1984).

Conflicts of law are decided on an issue by issue basis. *Veazey v. Doremus*, 510 A. 2d 1187, 1189 (N.J. 1986). In viewing the defamation issues, the facts establish that New Jersey law applies. The letters in contention (especially the June 10 letter) were penned by Ms. Garfinkel in Ohio and forwarded to Krivda at his New Jersey residence and to Mr. Mane at Mane's headquarters in Demarest, New Jersey. Although the underlying alleged misappropriation of formulas occurred in New York, there are no significant facts occurring in New York about the defamation count.

"Under New Jersey choice of law rules for defamation, if a defamatory communication is published in one state, that state's law will apply." *Karykous v. Sbarro, Inc.,* 2006 U.S. Dist. LEXIS 66900, at \*15 (D.N.J. Sept. 19, 2006)**;** *see also Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1138 (3d Cir. 1977); Restatement (Second) Conflict of Laws § 149 (1971). Therefore, New Jersey law should apply here, including the litigation privilege. The statements made by Ms. Garfinkel, when viewed in context, clearly fall within the broad strokes of the litigation privilege. They were made in a letter which ended with the sentence, "we intend to avail ourselves of all our legal rights and remedies against both [Krivda] and Mane without any further notice." This is a pre-litigation letter, and the statements made would be protected as part of the litigation. Under this analysis, Krivda's counterclaim is dismissed.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

September 18, 2009

-9-