**MORGAN, LEWIS & BOCKIUS LLP**
(A Pennsylvania Limited Liability Partnership)
502 Carnegie Center
Princeton, NJ  08540-6241
609.919.6600

Attorneys for Plaintiff
Givaudan Fragrances Corporation

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GIVAUDAN FRAGRANCES CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>**MANE USA, INC. and JAMES KRIVDA,**<br><br>    Defendants. | **CIVIL ACTION**<br>**DOCKET NO. 2:08-CV-04409**<br><br><br><br><br>**AMENDED COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Givaudan Fragrances Corporation ("Givaudan" or "the Company"), by and through its

counsel, Morgan, Lewis & Bockius LLP, brings this civil action against Defendants James

Krivda ("Krivda") and MANE USA, Inc. ("MANE"), and avers as follows:

        1.      Givaudan is in the business of creating and manufacturing fragrances for

both consumer products and the fine fragrance industry.  Krivda is a former Givaudan employee

who now works for Defendant MANE, a direct competitor of Givaudan.

        2.      In the three days before and two days after he announced his resignation

from Givaudan, Krivda, without authorization, and for no legitimate reason, accessed from the

Company's secret, protected, formula database, and printed, and, upon information and belief,

removed from the premises just under **700** of Givaudan's fragrance formulas.  The value of these

highly prized formulas cannot be overstated. Givaudan's annual sales can be measured in the

hundreds of millions of dollars, and its unique fragrance formulas are the lifeblood of its entire business.

3.      Upon discovering Krivda's malfeasance, Givaudan investigated the extent of his misconduct and made numerous efforts to obtain explanations and assurances from Krivda that Givaudan's confidential information had not been disclosed and would be returned.  Unable to obtain those assurances, Givaudan filed the instant lawsuit against Krivda on September 3, 2008.  On September 15, 2008, the Court entered a Consent Order for Preliminary Injunction that enjoined Krivda from using or disclosing Givaudan's confidential information.

4.      Documents and other information obtained in discovery have demonstrated that Krivda, between May 2008 and at least late 2008, while acting within the scope of his MANE employment responsibilities and intending to benefit MANE, actually copied and used Givaudan's trade secret fragrance formulas for the benefit of MANE. Beginning on May 2, 2008, at the latest, and continuing until at least late 2008, after entry of the Consent Order for Preliminary Injunction, Krivda entered Givaudan's trade secret fragrance formulas into a computerized MANE fragrance formula management system.  Givaudan's valuable trade secret information continues to reside on MANE's formula management database and, on information and belief, MANE took no steps to prevent entry of the purloined information into the MANE computer database and has taken no steps to prevent Krivda or other MANE employees from copying or using Givaudan's confidential and proprietary information for MANE's commercial advantage.

5.      MANE provided Krivda with a laptop computer and access to MANE's computerized formula management system on or before May 1, 2008, while Krivda was a Givaudan employee, so that Krivda could enter formulas into the MANE database while he still

was a Givaudan employee with access to Givaudan's formula management system.  Even after receiving notice that Krivda, without authorization, had printed approximately 700 of Givaudan's trade secret formulas in the few days before his departure from Givaudan, MANE failed to take reasonable measures to prevent Krivda from continuing to misappropriate and use Givaudan's trade secret information.

6.      This is an action for injunctive and legal relief seeking damages and a Permanent Injunction compelling Krivda and MANE to purge MANE's formula database system of all Givaudan property, to refrain from further using or disseminating Givaudan's trade secrets, and to bar Krivda from working for MANE or any other Givaudan competitor as a fine fragrance perfumer.

## **PARTIES**

7.      Givaudan is a corporation organized under the laws of the State of Delaware that maintains manufacturing plants and offices in various locations around the world. Givaudan's principal place of business is at 300 Waterloo Valley Road, Mount Olive, New Jersey, 07828.

8.      MANE USA is a corporation organized under the laws of the State of New Jersey that maintains its principal place of business at 60 Demarest Drive, Wayne, New Jersey, 07470.

9.      Defendant James Krivda is an individual who, upon information and belief, resides at 18 Dogwood Circle, Pine Brook, New Jersey 07058.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over the claims for relief arising under the Computer Fraud and Abuse Act, 18 U.S.C. §1030 *et seq.*, pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

11.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because all parties reside in this district.

## FACTUAL BACKGROUND

**A.     GIVAUDAN**

12.     Givaudan creates and manufactures unique and innovative fragrance formulas for its customers in the fine fragrances and consumer products industries.  Givaudan's tailor-made fragrance compounds are a differentiating key element for its customers' successful products.

13.     Givaudan's success and reputation are attributable to, among other things, its ability to consistently deliver new fragrances that generate high levels of consumer acceptance and brand loyalty in diverse product categories.

14.     Givaudan's success and reputation are also based, in substantial part, on commercially valuable confidential and proprietary business information developed at great effort and expense over many years and which is not publicly known or readily ascertainable.  Such confidential and proprietary information includes, but is not limited to, Givaudan's product formulas.

15.     Givaudan actively protects its trade secrets and confidential and proprietary business information in numerous ways.  Givaudan requires its employees (including Krivda) to sign Employee Confidentiality Agreements requiring them to promise to maintain the confidentiality of Givaudan's trade secrets and confidential and proprietary information.  All of

Givaudan's employees also receive a copy of Givaudan's Business Practices guide, which clearly states that all material containing any secret or confidential idea or information, including all electronic data, are company property and may not be removed from the premises or disclosed to any third party or used for the personal benefit of any employee.  See Employee Confidentiality Agreement for James Krivda, attached at Docket No. 3.4.

16.     In addition, Givaudan strictly limits access to its facilities, restricts removal of property from its premises and limits photography on its premises.  Computers are password protected and access to proprietary software packages is restricted to only certain persons on a need-to-know basis.  In particular, Givaudan goes to great lengths to restrict access to its formulas, by encrypting and limiting access to only a select group of employees.  In addition, remote computer access to documents other than formulas is strictly curtailed, with access limited only to Company-issued laptops and only with specially-installed remote access software intended to provide a secure working environment.  There is no remote access for the formula database and, therefore, a perfumer can only access formulas when on Givaudan premises.

## B.    KRIVDA'S EMPLOYEE CONFIDENTIALITY AGREEMENT

17.     Defendant Krivda was hired by Givaudan as Vice President, Perfumery on or around December 13, 2004, with a handsome guaranteed salary in excess of  $250,000 per year plus a generous five figure signing bonus. At the time of his departure he was being paid in excess of $325,000.

18.     In exchange for his highly lucrative compensation and other remuneration, Krivda agreed to maintain the secrecy and confidentiality of Givaudan's trade secrets and confidential and proprietary information and to refrain from removing them from the premises.

19.     The relevant provisions of Krivda's Employee Confidentiality Agreement

provide as follows:

3. <u>Non-disclosure of secret or confidential ideas or information</u>
EMPLOYEE shall not, either during or after the term of employment by GIVAUDAN, disclose to any person or organization other than GIVAUDAN, or utilize for the benefit or profit of EMPLOYEE or any other person or organization other than GIVAUDAN, any secret or confidential idea or information developed by EMPLOYEE for GIVAUDAN or obtained while EMPLOYEE is in GIVAUDAN'S employ by EMPLOYEE from GIVAUDAN, its consultants or affiliates, except as may be authorized by GIVAUDAN.  Included in the foregoing, by way of illustration and not limitation, are such items as research projects, findings or reports, business plans, [and] formulas….

6. <u>Material prepared by EMPLOYEE for GIVAUDAN</u>
The following shall be the property of GIVAUDAN exclusively:

    a.   Any material kept, prepared or received by GIVAUDAN in the course of or in order for EMPLOYEE to perform assigned duties for GIVAUDAN; and

    b.   Any material containing any secret or confidential idea or information, if such idea or information was

    i.
developed by EMPLOYEE for GIVAUDAN, or

    ii. obtained while in GIVAUDAN'S employ by EMPLOYEE from GIVAUDAN, its consultants or affiliates.

Included in the foregoing, by way of illustration and not limitation are such items as *formulas*….

7. <u>Removal and return of GIVAUDAN property</u>
EMPLOYEE shall not keep elsewhere than on GIVAUDAN premises, nor remove therefrom, any GIVAUDAN property, except and only so long as may be required for the performance of assigned duties for GIVAUDAN. Unauthorized possession of GIVAUDAN property, in particular, formulas, may lead to disciplinary action, up to and including termination.  In the event of termination of employment with GIVAUDAN, EMPLOYEE shall immediately return to GIVAUDAN any GIVAUDAN property in EMPLOYEE'S possession, under EMPLOYEE'S control or removed by EMPLOYEE from GIVAUDAN'S premises.

20.    The foregoing covenants are governed and construed in accordance with the laws of the State of New Jersey.

### C.      KRIVDA'S EMPLOYMENT AND RESIGNATION FROM GIVAUDAN

21.      As Vice President, Perfumery, Krivda's job responsibilities included creating fragrance formulas for Givaudan's clients**.**

22.      Although his employment allowed him computer access to Givaudan's trade secret formulas on a secure, protected database, it was not within the scope of Krivda's job responsibilities nor his authorization to print hundreds of proprietary formulas at a time, particularly not those developed by other perfumers or created by other employees, especially after Krivda already had accepted employment with a competitor.

23.      Krivda gave notice of his intent to resign from Givaudan on April 18, 2008, and informed Givaudan that he had accepted a position with one of Givaudan's competitors, MANE.  Krivda's guaranteed compensation from MANE is more than twice the compensation he received from Givaudan.  In addition, MANE's employment offer also included other extremely generous remuneration such a forgivable loan to repay moneys owed by Krivda to Givaudan, and a monthly vehicle allowance. On information and belief, such an enormous salary was attributable, in part, to the Givaudan formulas and other confidential trade secret information that Krivda would bring to MANE.

### D.      KRIVDA'S AND MANE'S MISAPPROPRIATION AND USE OF GIVAUDAN TRADE SECRET FRAGRANCE FORMULAS

24.      Givaudan and MANE are direct competitors in the marketplace for fragrances.

25.      During and after business hours on April 16, 17 and 18, Krivda printed from Givaudan's secure and protected formula database, approximately 650 proprietary fragrance formulas.  A significant number of these fragrance formulas were developed or created by other perfumers and employees of Givaudan.

26.     Krivda has no legitimate business reason for having printed out this massive number of formulas on the eve of his departure and after he had already accepted employment with a competitor.  Indeed, access to and printing of this enormous number of formulas was distinctly outside the scope of Krivda's job responsibilities and his authority as a perfumer with Givaudan.  In the normal course of his employment responsibilities, Krivda never accessed such a large volume of formula information within any comparable timeframe.

27.     During the five day period after Krivda gave his notice, between April 21 and April 25, he again accessed and printed an excessive number of proprietary formulas – averaging approximately 24 per day – all at a time when he was supposed to be winding down his work, not ramping it up.

28.     During the last week of April, 2008, Krivda traveled to Dallas, Texas to meet with a Givaudan customer.  Upon information and belief, Krivda made that trip with the intent to use, for MANE's commercial advantage, the information he learned during the course of his employment with Givaudan.

29.     Krivda's last day employed by Givaudan was May 2, 2008.  On May 1, 2008, MANE issued a laptop computer to Krivda and granted Krivda access to the MANE computerized fragrance formula management system, so that Krivda could enter formulas into the MANE database while he was still a Givaudan employee with access to Givaudan's formula management system.  Krivda continued to access Givaudan's trade secret formulas, including two formulas on May 1, and one formula on his last day, May 2.

30.     On or about May 28, 2008, during a routine review of the formula database, the technology department at Givaudan discovered that Krivda had engaged in highly suspicious activity prior to his departure from the Company.  The technology department

subsequently spent numerous hours investigating the extent of Krivda's unauthorized access of Givaudan's formula management system.

31.     At the time of this discovery, Senior Vice President and General Counsel of Givaudan, Jane E. Garfinkel ("Garfinkel"), sent Krivda a letter demanding that he explain his actions.  The letter requested that Krivda (1) explain why he had accessed the proprietary formulas; (2) explain what he did with the hard copies of the printed formulas; (3) notify Givaudan if he had downloaded or emailed any trade secrets to an external computer or internet account; and (4) immediately return to Givaudan any and all Givaudan property in his possession or transferred to others.

32.     On the evening of May 30, 2008, Krivda faxed to Garfinkel a letter saying that he could not "digest" her letter, and requesting time to consult legal counsel before responding.  Around this date, and presumably in response to Garfinkel's demand, Krivda also stopped by Givaudan's offices in New York and told Cosimo Policastro, the Executive Vice President of Fine Fragrances at Givaudan, that he had no formulas in his possession as he had either shredded or left behind the formulas he had printed before his resignation.  Krivda did however return to Mr. Policastro some of the material he had removed from Givaudan premises including a confidential marketing presentation containing the trade secrets of Givaudan. However, he did not return a single one of the hundreds of trade secret fragrance formulas wrongfully misappropriated and printed by Krivda.

33.     Throughout the Summer of 2008, Ms. Garfinkel repeatedly attempted to obtain assurances from Krivda, directly and through his counsel, and answers as to what had happened to the printed trade secret formulas.  Ms. Garfinkel expended enormous effort and hours of her time in effort to investigate Krivda's malfeasance and to assess the injury he had

caused to Givaudan.

34.     In May 2008, Givaudan also sought to obtain assurances from MANE that it would take steps necessary to ensure that Krivda was not improperly using or disclosing Givaudan's trade secret formulas, and to notify MANE of Krivda's continuing obligations under the Employee Confidentiality Agreement.  Likewise, on June 10, 2008, Ms. Garfinkel forwarded to MANE a letter requesting Krivda and MANE to "immediately take all appropriate measures to remedy" Krivda's misconduct or else Givaudan would be forced to "resort to more formal proceedings."

35.     Between May 2008 and at least late 2008, Krivda, while acting within the scope of his MANE employment responsibilities and intending to benefit MANE, actually used Givaudan's trade secret fragrance formulas to develop formulas on behalf of MANE.  In fact, a number of the formulas purportedly "developed by" Krivda during this time period actually were copied from Givaudan trade secret fragrance formulas misappropriated by Krivda.

36.     For example, in 2007, while employed by Givaudan, Krivda developed a fragrance formula that he named after a particular flower and entered into the Givaudan fragrance formula management system.  On or about April 30, 2008, on the eve of his departure from Givaudan, Krivda printed out this particular Givaudan trade secret formula.  On or about May 21, 2008, shortly after beginning work at MANE, Krivda entered into the MANE formula management system a formula with the exact same name, which was a copy of the Givaudan formula.  Each formula consists of a list of ingredients and a quantity for each ingredient.  Of the 97 ingredients in the formula Krivda entered into the MANE formula management database, 85 were in the Givaudan formula in identical or nearly identical amounts.

37.     Despite having been placed on notice of Krivda's misappropriation of

Givaudan trade secrets in late May or early June 2008, MANE failed to take appropriate steps to investigate Givaudan's allegations, to limit Krivda's access to the MANE formula management system, or to prevent and detect Krivda's ongoing wrongful use and copying of Givaudan trade secret information for the benefit of MANE.

**E.** **THE INSTANT LAWSUIT AND MANE'S AND KRIVDA'S POST-COMPLAINT MISAPPROPRIATION AND USE OF GIVAUDAN TRADE SECRET FRAGRANCE FORMULAS**

38. Givaudan filed the instant lawsuit on September 3, 2008. On September 15, 2008, this Court entered a Consent Order for Preliminary Injunction enjoining Krivda from using or disclosing Givaudan's confidential information

39. Following this Court's entry of the Consent Order for Preliminary Injunction, and in contempt thereof, Krivda, while acting within the scope of his MANE employment responsibilities and intending to benefit MANE, continued to copy and use Givaudan's trade secret fragrance formulas to develop formulas on behalf of and for the competitive advantage of MANE.

40. Notwithstanding this Court's entry of the Consent Order for Preliminary Injunction, MANE continued to fail to take appropriate steps to investigate Givaudan's allegations, to limit Krivda's access to the MANE formula management system, or to take any other steps prevent and detect Krivda's ongoing use of Givaudan trade secret information.

41. On or about January 8, 2009, Givaudan served upon MANE a subpoena dated January 7, 2009 (the "January 7 Subpoena"), requesting that MANE produce for inspection, among other things, copies of the fragrance formulas purportedly developed by Krivda during his MANE employment.

42. Upon receipt of the January 7 subpoena, MANE failed to take appropriate steps to limit Krivda's access to the MANE formula management system, or to otherwise prevent

Krivda's alteration of documents and spoliation of evidence.

43.     On information and belief, sometime shortly after Givaudan issued its subpoena to MANE, Krivda went into the MANE database and changed the names of a significant number of his MANE formulas to conceal from Givaudan and the Court the fact that the formulas he purportedly "developed" for MANE were, in fact, copied from the Givaudan trade secret formulas he had misappropriated.  Among other things, Krivda changed the name of the fragrance described, <u>supra</u> at Paragraph 36, from the name of a particular flower to the name of a root that has the same smell as the flower.

44.     Givaudan employees have invested numerous hours, at enormous cost to Givaudan, to investigate the extent of Krivda's malfeasance and determine, despite numerous efforts to conceal the relevant information, the extent to which trade secret, confidential and proprietary information of Givaudan was misappropriated and is being utilized by MANE.

45.     The formulas misappropriated by Krivda and MANE are worth millions of dollars.  Krivda and MANE's fraudulent misappropriation of these trade secrets will cause significant financial loss if they are allowed to retain Givaudan's trade secrets and confidential and proprietary information or to continue using the formulas either for their or another person's or organization's benefit.

<u>**COUNT ONE: VIOLATION OF THE COMPUTER**</u>
<u>**FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 *et seq.***</u>
<u>**(as to Defendant Krivda)**</u>

46.     Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

47.     The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* permits any person who suffers damage or loss by reason of any activity prohibited by the Act to bring a civil

action for damages and injunctive relief.

48.     In April and May 2008, and other dates during 2008, Krivda, knowingly and with intent to defraud, accessed Givaudan's protected computer network – and by means of such conduct, defrauded Givaudan and obtained for himself information of substantial value – the trade secrets and confidential and proprietary formulas therein.  At the time Krivda began accessing and printing the formulas, Krivda knew, and failed to disclose to Givaudan, that he had accepted employment with a competitor.

49.     Krivda's unauthorized access continued even after he had received a MANE laptop (while still a Givaudan employee on its payroll) and had begun uploading, copying, or otherwise transferring Givaudan's confidential, trade secret information to MANE's formula management database.

50.     Krivda's access to and printing mass quantities of formulas from Givaudan's protected computer system was in excess of his authorized access, particularly once he accepted employment with a competitor.  Krivda's Employee Confidentiality Agreement as well as Givaudan's Business Practices guide, which Krivda received upon employment, clearly state that all material containing any secret or confidential idea or information, including all electronic data, are company property and may not be removed from the premises or disclosed to any third party or used for the personal benefit of any employee.  See Employee Confidentiality Agreement of James Krivda, Docket No. 3.4.

51.     Upon information and belief, when confronted by Givaudan with the evidence that he had accessed and printed out approximately 700 formulas shortly prior to his departure, Krivda falsely misrepresented, in a June 6, 2008 letter to Ms. Garfinkel, that he had discarded, shredded and/or returned all such formulas prior to his departure.

52.     As a result of Krivda's conduct, Givaudan has sustained damage or loss of not less than $5,000.00, including but not limited to losses sustained in responding to Krivda's actions, investigating Krivda's malfeasance and taking remedial steps to prevent Krivda's further offenses.

53.     By reason of the acts alleged herein, Givaudan has been damaged in an amount to be determined at trial.

54.     Also by reason of the acts alleged herein, Givaudan is entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information, the removal of such information from any and all electronic devices or systems, and to all other relief necessary to prevent further use and/or dissemination thereof.

## COUNT TWO: BREACH OF KRIVDA'S EMPLOYEE CONFIDENTIALITY AGREEMENT (as to Defendant Krivda)

55.     Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

56.     In connection with, and as a condition of, his employment by Givaudan, Krivda executed a valid and enforceable Employee Confidentiality Agreement with Givaudan.

57.     The Employee Confidentiality Agreement prohibits unauthorized possession of Givaudan's property and prohibits the unauthorized removal of any Givaudan property, *particularly formulas*, from the premises of the Company.  It further requires that in the event of termination of employment with Givaudan, Krivda must immediately return to Givaudan any and all company property in his possession.

58.     The Employee Confidentiality Agreement also prohibits unauthorized disclosure of Givaudan's trade secrets to any third party, or use of such proprietary information

for Krivda's own benefit.  By way of example, the Agreement specifically states that proprietary formulas may not be disclosed to third parties or utilized for the employee's personal benefit.

59.     The Employee Confidentiality Agreement also explicitly states that all documents, files, and formulas kept by the Company, whether developed by Krivda or obtained by Krivda in the course of his employment with Givaudan, are the exclusive property of the Company.

60.     Krivda has breached the terms of his Employee Confidentiality Agreement with Givaudan by his unauthorized access and printing of Givaudan's proprietary formulas once he had accepted employment with a competitor, by removing such formulas from the Company's premises, by failing and continuing to refuse to return such formulas to the Company, by uploading, copying or otherwise transferring Givaudan's formulas to MANE's formula database, and by using Givaudan's trade secrets for his own benefit and/or the benefit of others, including MANE.

61.     By reason of the acts alleged herein, Givaudan has been significantly damaged, the precise amount to be determined at trial.

62.     By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information, the removal of such information from any and all electronic devices or systems, and to all other relief necessary to prevent further use and/or dissemination thereof and further herein to Givaudan.

### COUNT THREE: MISAPPROPRIATION OF TRADE SECRETS
#### (as to Defendants Krivda and MANE)

63.     Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

64.     The information contained in computer files accessed and printed by Krivda, and uploaded, copied or otherwise transferred by Krivda to MANE's formulas database, is confidential and proprietary and constitutes trade secrets belonging to Givaudan.

65.     Givaudan has expended substantial resources in developing its trade secrets for its exclusive benefit, and the information provides Givaudan with an advantage over its competitors. Givaudan's trade secrets derive economic value from the fact that they are neither generally known nor readily ascertainable by proper means by any third parties.

66.     Givaudan does not disclose its trade secrets to its competitors and has taken all reasonable efforts to protect their confidentiality, by means including, but not limited to, having its employees sign confidentiality agreements and maintaining security procedures protecting its trade secrets.

67.     Givaudan communicated its trade secrets to Krivda in confidence and Krivda knew that Givaudan intended its trade secrets to remain confidential.

68.     By accessing and printing the formulas after he had secretly accepted employment with a competitor, removing Givaudan's trade secrets from the Company's premises, and uploading, copying or otherwise transferring them to MANE's formula database, Krivda knowingly violated the law and company policies that were intended to protect Givaudan's trade secrets.

69.     MANE knowingly, willfully, and maliciously acquired Givaudan's trade secrets by encouraging and allowing Krivda to upload, copy or otherwise transfer Givaudan's confidential, trade secret information to its formula database, and by failing to take any precautions to prevent or even, at a minimum, investigate the copying and misuse of Givaudan's confidential information.

70.     Krivda and MANE have used Givaudan's trade secrets to compete with Givaudan.

71.     Krivda and MANE's actions as set forth herein constitute willful and malicious misappropriation of Givaudan's trade secrets.

72.     By reason of the acts alleged herein, Givaudan has been significantly damaged, the precise amount to be determined at trial.

73.     By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information, the removal of such information from any and all electronic devices or systems, and to all relief necessary to prevent further use and/or dissemination thereof and further harm to Givaudan.

### COUNT FOUR: BREACH OF THE DUTY OF LOYALTY
### (as to Defendant Krivda)

74.     Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

75.     Krivda was an employee of Givaudan.  As such, he owed a duty of loyalty to Givaudan not to take any actions contrary to Givaudan's interest while still in Givaudan's employ.

76.     Krivda owed a further duty not to engage in acts of secret competition by taking or disclosing Givaudan's legally protected information in order to seek a competitive advantage for MANE before and upon his resignation.

77.     Krivda owed this duty of loyalty until the last hour of his employment by Givaudan.

78.     Krivda breached his duty of loyalty to Givaudan by taking actions

contrary to its interest while employed by Givaudan.  Additionally, he breached the duty of loyalty by using, copying, removing and disclosing Givaudan's confidential and trade secret information for the benefit of himself and his new employer MANE.

79.     Krivda's acts are unlawful, were committed in furtherance of an unlawful objective, and were malicious, intentional, willful, wanton and in deliberate disregard of the known rights of Givaudan.

80.     As a result, Givaudan has been damaged and harmed, the precise amount to be determined at trial.

81.     By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information, the removal of such information from any and all electronic devices or systems, and to all relief necessary to prevent further use and/or dissemination thereof and further harm to Givaudan.

## COUNT FIVE: AIDING AND ABETTING BREACH OF THE DUTY OF LOYALTY
### (as to Defendant MANE)

82.     Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

83.     Krivda breached his duty of loyalty to Givaudan.

84.     MANE knowingly aided and abetted that breach by willfully inducing, encouraging, and allowing Krivda to access and remove from Givaudan its trade secrets and other confidential and proprietary information, to upload, copy or otherwise transfer Givaudan formulas to MANE's database while still in Givaudan's employ, and inducing, encouraging, and allowing Krivda to use, copy, and disclose Givaudan's formulas and information he had gained while in Givaudan's employ to benefit himself and MANE.

85.     MANE aided and abetted this breach of the duty of loyalty knowing that Krivda's conduct would constitute such a breach.

86.     As a result, Givaudan has been damaged and harmed, the precise amount to be determined at trial.

87.     By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information, the removal of such information from any and all electronic devices or systems, and to all relief necessary to prevent further use and/or dissemination thereof and further harm to Givaudan.

## COUNT SIX: UNFAIR COMPETITION
### (as to Defendants Krivda and MANE)

88.     Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

89.     By virtue of the acts described above, the Defendants, individually and/or collectively, have unfairly misappropriated the confidential and trade secret property of Givaudan, and have employed unfair and deceptive practices intended to hinder, delay, divert, or prevent Givaudan from fairly competing with MANE and Krivda.

90.     The Defendants, individually and/or collectively, have committed these acts maliciously and for the sole purpose of inflicting harm on Givaudan or to benefit themselves at the expense of Givaudan.

91.     As a result, Givaudan has been damaged and harmed, the precise amount to be determined at trial.

92.     By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary

information, the removal of such information from any and all electronic devices or systems, and to all relief necessary to prevent further use and/or dissemination thereof and further harm to Givaudan.

## COUNT SEVEN: TORTIOUS INTERFERENCE WITH CONTRACT
### (as to Defendant MANE)

93.      Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

94.      MANE knew of the Employee Confidentiality Agreement between Givaudan and Krivda.

95.      MANE intentionally and without justification maliciously interfered with the contract between Givaudan and Krivda, and also induced Krivda to breach that Agreement.

96.      But for MANE's conduct, Givaudan would have enjoyed the benefits of that Agreement.

97.      As a result, Givaudan has been damaged and harmed, the precise amount to be determined at trial.

98.      By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information, the removal of such information from any and all electronic devices or systems, and to all relief necessary to prevent further use and/or dissemination thereof and further harm to Givaudan.

## COUNT EIGHT: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (as to Defendants MANE and Krivda)

99.      Givaudan repeats and realleges the allegations made in each of the foregoing paragraphs as though fully set forth herein.

100.    Through its business efforts, Givaudan has developed highly valuable trade secrets for its exclusive benefit, and the information provides Givaudan with an advantage over its competitors.  Givaudan's trade secrets derive economic value from the fact that they are neither generally known nor readily ascertainable by proper means by any third parties.  Also through its business efforts, Givaudan has developed highly valuable good will and customer relationships that provide Givaudan with an advantage over its competitors.  MANE and Krivda have intentionally, maliciously and unjustly interfered with Givaudan's ability to protect its advantageous confidential information and have intentionally, maliciously and unjustly interfered with Givaudan's good will and customer relationships.

101.    Givaudan had a reasonable expectation of economic advantage that has been lost as a result of Krivda and MANE's improper and malicious interference.

102.    This improper interference has caused and continues to cause damages to Givaudan in an amount to be determined at trial.

103.    By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information, the removal of such information from any and all electronic devices or systems, and to prevent further use and/or dissemination thereof and further harm to Givaudan.

## COUNT NINE: CONVERSION
### (as to Defendants Krivda and MANE)

104.    Givaudan repeats and realleges the forgoing paragraphs as if fully set forth herein.

105.    At all times, Givaudan retained all right, title, and interest in the trade secrets and confidential and proprietary information taken by Krivda and MANE.

106.    Krivda and MANE knowingly, dishonestly, and intentionally took, copied

and retained Givaudan's trade secrets and confidential and proprietary information without authorization.

107.    Krivda and MANE's acts constitute a knowing, unlawful and intentional conversion of trade secrets and confidential and proprietary information for Krivda and MANE's economic benefit and to the economic detriment of Givaudan.

108.    Krivda and MANE have refused Givaudan's demands to return the formulas and other trade secret, confidential information or items that Krivda removed from Givaudan's offices.

109.    As a direct and proximate result of this conversion, Givaudan has been significantly damaged, the precise amount to be determined at trial.

110.    By reason of the acts alleged herein, Givaudan is also entitled to injunctive relief to compel the return of Givaudan trade secrets and confidential and proprietary information, the removal of such information from any and all electronic devices or systems, and to all relief necessary to prevent further use and/or dissemination thereof.

## COUNT TEN: REPLEVIN
### (as to Defendants Krivda and MANE)

111.    Givaudan repeats and realleges the forgoing paragraphs as if fully set forth herein.

112.    Krivda and MANE have illegally converted Givaudan's trade secrets and confidential and proprietary information.

113.    Krivda and MANE do not have the right to possession of such trade secrets and are obligated to return the stolen trade secrets and confidential and proprietary information to Givaudan.

114.    Givaudan has suffered, and will continue to suffer, irreparable harm as a

result of Krivda and MANE's possession of Givaudan's property.

## COUNT ELEVEN: CONSPIRACY
### (as to Defendants Krivda and MANE)

115.     Givaudan repeats and realleges the forgoing paragraphs as if fully set forth herein.

116.     Defendants knowingly conspired and agreed among themselves to engage in the unlawful and tortious conduct described above, deliberately engaged in such conduct in furtherance of their unlawful plan or scheme, acted on behalf of each other at all relevant times, knowingly accepted the illicit benefits of the conspiracy, and knowingly participated in, profited from, and/or ratified each other's misconduct.

117.     As a result, each defendant is liable for the conduct of the other defendants and the other participants in the conspiracy, pursuant to common law.

WHEREFORE, Givaudan prays for judgment as follows:

a.     That Krivda and MANE be ordered permanently to return to Givaudan all trade secrets and other confidential and proprietary information in his possession or control;

b.     That Krivda be permanently enjoined from using, copying, uploading, downloading, transmitting, transferring, transmitting, or disclosing any Givaudan trade secrets and confidential and proprietary information including, but not limited to, any and all formulas;

c.     That Krivda be ordered to disclose the particular trade secrets and confidential, proprietary information he misappropriated along with the names and addresses of any and all persons to whom he has disclosed Givaudan's trade secrets and other confidential, proprietary information including, but not limited to, any and all formulas, marketing materials or information, or sensory data or results;

       d.      That Krivda be ordered to disclose to the Court the location of the

formulas removed from Givaudan's premises since they time they were printed,

       e.      That Krivda be ordered to disclose for what specific purposes and projects

he has used Givaudan's trade secrets and confidential and proprietary information including, but

not limited to, any and all formulas;

       f.      That MANE be ordered to purge its formula database system of all

Givaudan property and that Givaudan be permitted, at MANE's expense, to confirm and validate

independently that any and all information belonging to Givaudan or derived from Givaudan

information has been removed;

       g.      That Krivda be permanently barred from working as a fine fragrance

perfumer for MANE or any other Givaudan competitor for a period of three years;

       h.      That Givaudan be awarded compensatory damages, punitive damages,

pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs; and

       i.      That Givaudan be awarded such other and further necessary and proper

relief as the Court may deem just and proper.

                      Respectfully submitted,

                      MORGAN, LEWIS & BOCKIUS LLP
                      Attorneys for Plaintiff
                      Givaudan Fragrances Corporation

                      /s/ Michelle S. Silverman
                      _____

                      Eric Kraeutler
                      Michelle Seldin Silverman

Dated: April 30, 2010

## JURY TRIAL DEMAND

Plaintiff Givaudan demands trial by jury on all issues so triable.

MORGAN, LEWIS & BOCKIUS LLP
Attorneys for Plaintiff
Givaudan Fragrances Corporation

/s/ Michelle S. Silverman
Eric Kraeutler
Michelle Seldin Silverman

Dated: April 30, 2010

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

I hereby certify that the matter in controversy here is not the subject of any other action pending in any other court, or of any pending arbitration or administrative proceeding.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
Attorneys for Plaintiff
Givaudan Fragrances Corporation

/s/  Michelle S. Silverman
Eric Kraeutler
Michelle Seldin Silverman

Dated: April 30, 2010

## **CERTIFICATE OF SERVICE**

       I hereby certify that I caused to be served a true and correct copy of this Amended Complaint And Demand For Jury Trial via electronic filing this 30th day of April, 2010, on:

Adam Saravay

McCarter & English

Four Gateway Center

100 Mulberry Street

Newark, NJ 07102

*Attorneys for Defendant James Krivda*

       I further certify that Defendant MANE USA, Inc. will be served in accordance with the Federal Rules of Civil Procedure.

<u>/s/ Michelle Seldin Silverman</u>
Michelle Seldin Silverman

Dated:  April 30, 2010