UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GIVAUDAN FRAGRANCES CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> JAMES KRIVDA and MANE USA, INC., <br><br> Defendants. | CIVIL ACTION <br> DOCKET NO. 08-CV-04409 <br><br> **FILED ELECTRONICALLY <br> UNDER SEAL** <br><br> Motion Date: March 18, 2013 |

---

**REPLY MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION
TO MANE USA, INC.'S MOTION FOR SUMMARY JUDGMENT
DISMISSING GIVAUDAN'S CLAIMS AGAINST MANE FOR
TRADE SECRET MISAPPROPRIATION AND INJUNCTIVE RELIEF**

---

**Oral Argument is Requested Pursuant to Local Rule of Civil procedure 78.1**


On the Brief:

**LITCHFIELD CAVO LLP**
1800 Chapel Avenue West, Suite 360
Cherry Hill, NJ 08055
(856)854-3636

John D. Shea, Esquire
Nicole Strauss-Russo, Esquire

**STITES & HARBISON, PLLC**
400 West Market Street
Louisville KY 40202
(502)587-3400

Thad M. Barnes, Esquire


**Attorneys for Defendant Mane USA, Inc.**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT .................................................................1

II.    ARGUMENT ........................................................................................3

     A.     The Law Required Givaudan to Give Mane Notice of the Content
         of Each Allegedly Misappropriated Formula at
         the Outset of this Case ...............................................................3

     B.     Givaudan's Ongoing Failure and Delay in Giving Notice of
         Formula Content Negates Any Element of Intent Against Mane ..................... 4

     C.     Givaudan Cannot "Impute" Notice to Evade Its Burden of
         Proving Intent Issue .................................................................... 6

     D.     No Further Discovery is Necessary to Rule on This Legal Issue.................. 9

     E.     Givaudan Overbroad and Untimely Claims for Injunctive
         Relief Cannot be Presented to a Jury............................................. 10

IV.   CONCLUSION ............................................................................... 12

i

## TABLE OF AUTHORITIES

## CASES

*American Can Co. v. Mansukhani,* ............................................................... 11
    742 F.2d 314, 333 (7th Cir. 1984)

*Art of Living Found. v. Doe,* ....................................................................... 9
    2012 U.S. Dist. LEXIS 61582, 39-41 (N.D. Cal. May 1, 2012)

*Atochem North. Am., Inc. v. Gibbon,* ........................................................ 8,10
    1991 WL 160939 at 9 (D. N.J. 1991)

*AutoMed Techs., Inc. v. Eller,* ..................................................................... 8
    160 F. Supp. 2d 915 (N.D. Ill. 2001)

*Corning Inc. v. Picvue Elec., Ltd.,* ............................................................... 11
    365 F.3d 156 (2d Cir. 2004)

*Doebler's Penn. Hybrids, Inc. v. Doebler Seeds, LLC.,* ..................................... 10
    88 Fed. Appx. 520, 523 (3d Cir. 2004)

*E.W. Bliss Co. v. Struthers-Dunn, Inc.,* ........................................................ 11
    408 F.2d 1108, 1114-15 (8th Cir. 1969)

*Fox v. Millman,* ........................................................................................ 7
    210 N.J. 401, 425-427 (N.J. 2012)

*Hill v. Best Med. Int'l, Inc.,* ........................................................................ 3
    2010 U.S. Dist. LEXIS 62726 (W.D. Pa. June 24, 2010)

*Hill v. Best Med. Int'l, Inc.,* ..................................................................... 6, 8
    2011 U.S. Dist. LEXIS 123845 *23 (W.D. Pa. Oct. 24, 2011)

*Identification of Trade Secret Claims in Litigation:*
*Solutions for a Ubiquitous Dispute,* .......................................................... 3, 8
    5 Nw. J. Tech. & Intell. Prop. 68 (2006)

*Infinity Prods. v. Quandt,* ........................................................................... 7
    810 N.E.2d 1028, 1034 (Ind. 2004)

*Litton Sys., Inc. v. Sundstrand Corp.,* .......................................................... 11
    750 F.2d 952, 956 (Fed. Cir. 1984)

*MAI Sys. Corp. v. Peak Computer, Inc.,* ....................................................... 11
    991 F.2d 511, 522-23 (9th Cir. 1993)

*Microstrategy, Inc. v. Business Objects*, S.A., ...................................................... 11
    331 F. Supp. 2d 396, 431 (E.D. Va. 2004)

*Rohm and Haas Co. v. Adco Chemical, Co.*, ...................................................... 6, 7
    689 F.2d 424, 429-30 (3d Cir. 1982) (emphasis added)

*Roton Barrier, Inc. v. Stanley Works*, ............................................................. 11
    79 F.3d 1112, 1121-22 (Fed. Cir. 1996)

*SI Handlings Sys., Inc. v. Heisley*, ................................................................. 10
    753 F.2d 1244, 1265-66 (3d Cir. 1985)

*Sit-up Ltd. v. IAC/Interactive Corp.*, ............................................................... 4
    2008 U.S. Dist. LEXIS 12017, 32-34 (S.D.N.Y. Feb. 20, 2008).

*Southwest Research Inst. v. Keraplast Tech., Ltd.*, ............................................... 11
    103 S. W.3d 478, 483 (Tex. Ct. App. 2003)

*Struthers Scientific & Intern. Corp. v. General Foods Corp.*, .................................... 8
    51 F.R.D. 149, 151-52 (D. Del. 1970)

*Sutra, Inc. v. Ice. Express, EHF*, .................................................................. 5
    2008 U.S. Dist. LEXIS 52849 (D. Mass. July 10, 2008)

*Vital State Can., Ltd. v. Dreampak, LLC*, ......................................................... 10
    303 F. Supp. 2d 516, 521-23 (D.N.J. 2003)

## **RULES**

Rule 7.1(d)(5) ............................................................................................. 9

Rule 26(a) ................................................................................................. 5

Rule 37 (c)(1) ............................................................................................ 5

Rule 56(d) ................................................................................................. 3, 9

Rule 65(d) ................................................................................................. 11

## I.    PRELIMINARY STATEMENT

The law of trade misappropriation in New Jersey is well settled, as set forth at length in Mane's moving papers. There is no question that the law requires the plaintiff in such cases to identify with specificty the trade secret at issue in order to allow the defendant the opportunity to investigate and assess the claims being asserted. Without that disclosure, there is no way to establish to that a defendant **knowingly** misappropriated the trade secret. That disclosure did not happen in this case. Givaudan did not disclose the actual content of any of the formulas at issue in this case until July 2010, over two years after the claim was asserted and after litigation commenced, and then it was only 5, not the 616 alleged to have been taken by Krivda. Givaudan cannot prevail in its claim that Mane misappropriated 616 trade secrets when Mane did not have notice of any of the trade secrets allegedly misappropriated until two years after the alleged misappropriation occurred.

Givaudan's opposition asserts that it provided adequate notice to Krivda and Mane by advising Mane in a two page letter in June 2008 of its concerns that Krivda may have misappropriated 616 unidentified trade secrets. Nowhere in that letter, or any other communication, did Givaudan identify with any specificity the Givaudan formulas allegedly taken. Then, three years later and a year and a half after Givaudan sued Mane for trade secret misappropriation, Givaudan produced a "list" of formula names that it claims Krivda printed out in the weeks before he left the employ of Givaudan. That "list" provides nothing but the name of a formula, the list contains no contents of the formula, no ingredients and no parts or percentages that make up the composition of the formula. That "list" did not identify or provide Mane with any of the precise details that actually makes up the formula.

1

After claiming that the "list" of formula names provided Mane with notice of the trade secrets, Givaudan then attempts to side step the legal analysis as to whether specific and adequate notice was provided to Mane by asserting that discovery disputes in 2009, 2010 and 2011 somehow inhibited its ability to provide the required notice. That argument fails because Givaudan had sole control and custody of the information it claims was misappropriated, and no discovery from Mane impacts whether notice of that information was timely or adequately provided to Mane.[1] Givaudan also ignores the fact that Krivda denied any misappropriation to Mane, denied any misappropriation under oath at his deposition, and in a Consent Order entered almost immediately after litigation was commenced. The argument that Krivda had the trade secrets in his possession, so by virtue of vicarious liability Mane must therefore have knowledge of them, is contradicted by the fact that Krivda denied taking them under oath and upon direct questioning from Mane.

Givaudan then attempts to assert that the May 4, 2009 Consent Order entered by Magistrate Judge Salas (DE 45) somehow supports its argument that it provided adequate notice of the trade secrets to Mane prior to the entry of that Order. That argument is completely fabricated. The May 4, 2009 Order speaks for itself, and in no way suggests, indicates or validates Givaudan's claim that it timely or adequately disclosed its trade secrets to Mane. Indeed, upon examination, the Order compels Mane to produce its formulas to Givaudan, and in analyzing the Mane formulas, if Givaudan determined there was a match, the parties were to submit the alleged match to a neutral for evaluation and determination. Mane complied with that Order and turned over thousands of Krivda's fragrance formulas created since his arrival at

---

[1] That argument also fails because Magistrate Judge Arpert rejected Givaudan's first Motion to Compel and for Sanctions in a detailed Opinion and Order dated May 8, 2012. (*See* DE 164.)

Mane. Givaudan never complied with that Order, and in fact, to this day, Givaudan is still in violation of that Order in that it has never submitted an alleged match to a neutral for determination. The May 4, 2009 Order in now way supports Givaudan's claim that it provided Mane with adequate and specific notice of the alleged trade secrets at issue in 2008 or 2009.

Finally, Givaudan misstates the procedural history with regard to the recent discovery ordered on this case, and completely ignores the fact that Magistrate Judge Arpert granted Mane leave to file this motion for summary judgment on this legal issue during the same February 7, 2013 in-person Case Management Conference in which he advised all counsel that there would be additional discovery in this case. The February 15, 2013 discovery Order by Magistrate Judge Arpert arose from that conference, and has no bearing on the legal issue presented in the motion.

Givaudan's blatant efforts to fabricate a factual issue where none exists should be rejected. Givaudan has substantively responded to Mane's Motion, and its veiled attempt to delay ruling on the Motion by asserting a Rule 56(d) Certification is improper, and should be rejected.

## II.  ARGUMENT

### A.  The Law Required Givaudan to Give Mane Notice of the Content of Each Allegedly Misappropriated Formula at the Outset of this Case

Givaudan does not respond to the substantial authority in Mane's Brief (*See* DE 240) holding that a plaintiff is strictly required at the outset of litigation to give precise notice of the trade secrets at issue. *See Hill v. Best Med. Int'l, Inc. See* 2010 U.S. Dist. LEXIS 62726 (W.D. Pa. June 24, 2010) (collecting authority). Where the alleged trade secret is a *chemical formula*, the requisite identification includes a complete disclosure of the *list of ingredients and dosage rates*. *See Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous*

3

*Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68 (2006) (collecting authority) ("Chemical Mixtures and Recipes: Mixtures, whether for something as simple as some food product recipes or the combination of ingredients in a certain brand of gasoline, should be identified by the combination of publicly known elements -- including the measurements or ratios for each ingredient.").

"Without a precise identification , , , , the defendant cannot compare the claims against public domain information to challenge the alleged secrecy of such information. It is difficult to conduct a public domain analysis if the claims are identified at only a generic level. . . Stated differently, the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret." *Id.*

Detailed notice of the trade secrets at issue is required at the outset of the case because it frames all aspects of the case thereafter. "[S]pecificity is required before the court so that the defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and non-secret information, and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation." *See Sit-up Ltd. v. IAC/Interactive Corp.*, 2008 U.S. Dist. LEXIS 12017, 32-34 (S.D.N.Y. Feb. 20, 2008).

**B.    Givaudan's Ongoing Failure and Delay in Giving Notice**
**of Formula Content Negates Any Element of Intent Against Mane**

Five years into this case, Givaudan has never disclosed the content of the 616 alleged misappropriated formulas to Mane. Givaudan's claims in its Opposition (DE 258, at 6-11) that it provided Mane with notice of the allegedly misappropriated formulas via letters written to Krivda's counsel in 2008 and Mane's counsel in 2011, and by providing a "list" of the names of formulas Krivda is alleged to have printed in the weeks leading to his departure from Givaudan. However, the documents Givaudan cites contain only the ***names***, not the ***content***, of the formulas

4

allegedly printed. Thus it was and is impossible for Mane to compare the content of these formulas to any of Krivda's work at Mane. Mane has no idea what are the contents, ingredients, and combinations that make up the formulas. Mane has never seen copies of the formulas. Mane has never been given notice of this basic information from which to investigate Givaudan's bare allegations against Krivda about those 616 formulas. Givaudan has sole control over those documents.

The only formula *content* ever disclosed to Mane was for 31 formulas. That disclosure occurred as follows: 5 formulas on July 8, 2010; 5 formulas on January 12, 2012; 3 formulas on January 31, 2012; 1 formula on February 22, 2012; 2 formulas on May 14, 2012; 14 on August 3, 2012; and 1 formula on January 13, 2013. Of those 31 formulas, all but 15 have been exonerated in request for admission answers in which Givaudan conceded it had no basis to contend that the formulas were misappropriated. (*See* Exhibit DD to Shea Certification.)

Regardless, Givaudan's delay and equivocation in disclosing the content of these 31 formulas precludes any claim against Mane. This negates the element of intent. Until Mane was put on notice that a formula allegedly belonged to Givaudan, it lacked the requisite mental state to have knowingly misused the formula. Any use of a formula before receipt of such notice is not an actionable claim against Mane. Mane cited the substantial body of cases in which courts routinely hold that a plaintiff's failure, delay, generality, or equivocation in giving a precise description of the trade secrets at issue undermine its burden of proof and is grounds for summary judgment. (*See* DE 240, at 26-40). These cases, which Givaudan completely ignored are directly on point. *See, e.g., Sutra, Inc. v. Ice. Express, EHF*, 2008 U.S. Dist. LEXIS 52849 (D. Mass. July 10, 2008) (Granting summary judgment where plaintiff inadequately described the trade secret for 3 years of litigation, and further holding that plaintiff's untimely disclosure

on the eve of summary judgment should be excluded under Rules 26(a) and 37(c)(1)), noting "It is hornbook law that "the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret."); *Hill v. Best Med. Int'l, Inc.*, 2011 U.S. Dist. LEXIS 123845 *23 (W.D. Pa. Oct. 24, 2011) (Granting summary judgment on facts nearly identical to this case and denying plaintiff's request for additional open-ended discovery from the defendant, noting "this decision was consistent with those of other courts which have required the plaintiff first to identify the trade secrets in question before it is permitted discovery into the defendant's confidential information.")

Givaudan claims that by letter dated May 18, 2012, it offered to allow the defendants to inspect the 616 formulas on a single computer in its counsel's office, with only a specified client representative present, taking no notes and obtaining no copies, all while under the supervision of Mane's counsel. The restrictions imposed with this offer made it impossible for Mane to have any meaningful opportunity to inspect the formulas. Further, the May 18, 2012 "offer" from Givaudan was made four years after the matter arose, and therefore, supports Mane's position on summary judgment that Givaudan failed to provide timely and specific notice of the trade secrets at issue to Mane.

**C.**   **Givaudan Cannot "Impute" Notice To Evade Its Burden of Proving Intent**

Givaudan asserts that it does not have to prove that Mane intended to, or knowingly, misused a formula. It argues that any knowledge that Krivda had by virtue of his alleged activities at Givaudan is imputed to Mane via the general principles of agency. (DE 258, at 7). This theory of imputed knowledge is directly contrary to the specific elements of a trade secret claim against a subsequent employer. To sustain a trade secret misappropriation claim against a subsequent employer, a former employer bears the burden to establish: "(1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by

6

the employee in breach of that confidence, (4) acquired by the competitor *with knowledge* of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff." *Rohm and Haas Co. v. Adco Chemical, Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982) (emphasis added).

Givaudan's theory of imputed notice would turn an intentional tort into a vicarious liability claim, and thus undermine the strict elements of knowledge required by *Rohm and Haas.* Courts have explicitly rejected this imputation theory in the trade secret misappropriation context:

> As [plaintiff] correctly points out, respondeat superior is a common law doctrine under which liability is imposed by law upon the master for acts done by the servant, regardless of the master's complicity in the acts. Indeed, it may impose liability even when the master directed the servant to the contrary. Surely, this doctrine must be thought of as conflicting with the [trade secret act] requirements that a claimant demonstrate that the defendant "knows or has reason to know" that the trade secret at issue was acquired by improper means. It is thus displaced by the provisions of the uniform act.

*Infinity Prods. v. Quandt*, 810 N.E.2d 1028, 1034 (Ind. 2004)

More importantly, Givaudan's theory of imputed knowledge is directly contrary to the recent holding of *Fox v. Millman*, 210 N.J. 401, 425-427 (N.J. 2012). Even if an employee is ultimately found to have misused confidential information from a former employer, there is no cause of action against the current employer unless it was specifically aware that the information was proprietary at the time of misuse. *Id.* at 426. The New Jersey Supreme Court recently confirmed that the law does not "impose on [subsequent employers] an affirmative duty to undertake an inquiry, independent of the information given to them by [the employee] as to the source" of the employee's work product. *Id.* Subsequent employers are allowed to rely on the representations of their employees without any further "duty of inquiry." *Id.* at 427. The

employee's contractual or fiduciary "duty to safeguard confidential information" is not imputed to subsequent employers.  Givaudan makes no attempt to address this case.

**D.      No Further Discovery is Necessary to Rule on This Legal Issue**

Givaudan's claim that it needs additional discovery from Mane in order to disclose the content of its own formulas is contrary to black letter law.  A plaintiff is "required to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets." *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915 (N.D. Ill. 2001); *see also Struthers Scientific & Intern. Corp. v. General Foods Corp.*, 51 F.R.D. 149, 151-52 (D. Del. 1970) (requiring trade secret plaintiff to make reasonable particularized disclosure of its allegedly misappropriated trade secrets before it could obtain discovery of defendant's confidential information).  Thus, Givaudan cannot claim it needs discovery from Mane as grounds to evade summary judgment on this issue. *See Hill v. Best Med. Int'l, Inc.*, 2011 U.S. Dist. LEXIS 123845 *23 (W.D. Pa. Oct. 24, 2011) (rejecting this exact argument); *see also Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68, 85-91 (2006) (collecting substantial authority on this point).

Givaudan misstates the procedural history with regard to the recent discovery ordered in this case, and completely ignores the fact that Magistrate Judge Arpert granted Mane leave to file this specific motion for summary judgment on this legal issue during the same February 7, 2013 in-person Case Management Conference in which he advised all counsel that there would be additional damages and expert discovery in this case to prepare the case for trial.  The February 15, 2013 discovery Order by Magistrate Judge Arpert has no bearing on this legal issue—rather it relates to alleged "damages" discovery.  Givaudan's blatant efforts to a fabricate a factual issue should be rejected.  Judge Arpert repeatedly acknowledged that Mane's summary judgment

motion raised a substantive legal issue that can and should be decided in parallel to the remaining discovery process.

We are five years into this case. The legal issue addressed in Mane's motion is ripe for decision. The motion was not premature. Records showing what information Givaudan did and did not provide to Mane (and when) are in Givaudan's possession and control, not Mane's. Therefore, any further discovery from Mane has no bearing on this issue.

Moreover, Givaudan substantively responded to Mane's Motion, responded to Mane's statement of material facts, and included a counter statement of material fact. Givaudan also set forth legal argument of its Memorandum. Givaudan has put forth its substantive position on this issue. Givaudan invoked the automatic extension under Local Rule 7.1(d)(5) on the same day that the February 15, 2013 Order was entered. Had Givaudan actually needed any discovery from Mane in order to address this issue, Givaudan simply should have made moved for abeyance under Rule 56(d). However, Givaudan did not so, because the discovery from Mane at issue in the February 15, 2013 Order has no bearing on this motion.

A plaintiff cannot evade summary judgment under Rule 56(d) where the dispositive issue is plaintiff's own failure to produce evidence to substantiate its prima facie claim that it owns the intellectual property at issue. *Art of Living Found. v. Doe*, 2012 U.S. Dist. LEXIS 61582, 39-41 (N.D. Cal. May 1, 2012) ("Plaintiff itself should be in possession of any evidence pertaining to the issue of copyright ownership, and Plaintiff [*41] should have presented this evidence, which is critical to establishing its prima facie case, in defending against this summary judgment motion. Rule 56(d) does not allow Plaintiff to defeat Defendants' summary judgment motion by withholding evidence in Plaintiff's possession that is critical to establishing Plaintiff's own prima facie case.")

9

All documents relevant to whether Givaudan timely and specifically placed Mane on notice of the formulas at issue are in Givaudan's possession already, and are within the record under review. Nothing Givaudan can say or do now will change the fact that it failed to put Mane on notice of its trade secrets in 2008. That failure is dispositive.

**E.      Givaudan Overbroad and Untimely Claims for
          Injunctive Relief Cannot be Presented to a Jury.**

Even assuming that had timely given notice of the content of the 31 identified formulas (which it did not), Givaudan's argument that it can obtain relief of any kind beyond those 31 formulas is contrary to countless decisions on this issue. It is not a theory that can be submitted to a jury. Givaudan continues to press its claim that if Krivda misappropriated one formula, then he misappropriated them all. Regardless of whether Givaudan claims a single alleged match or twenty nine, it claims that it is entitled to injunctive relief against Mane based on all of the formulas Krivda created at Mane from May 5, 2008 to the present are contrary to the law and should be dismissed. Givaudan demands that Mane purge every formula that Krivda created or accessed in during his nearly five years of employment at Mane—thousands of formulas—and then halt all future work by Krivda. A strict requirement for injunctive relief is that it be narrowly and precisely defined so as to encompass only the trade secrets at issue, and nothing more. *SI Handlings Sys., Inc. v. Heisley*, 753 F.2d 1244, 1265-66 (3d Cir. 1985). The relief sought must also be "no broader than necessary." *Atochem North. Am., Inc. v. Gibbon*, 1991 WL 160939 at 9 (D. N.J. 1991). The injunction must be limited to specific products as to which there is affirmative evidence of copying. *Doebler's Penn. Hybrids, Inc. v. Doebler Seeds, LLC.*, 88 Fed. Appx. 520, 523 (3d Cir. 2004); *see also Vital State Can., Ltd. v. Dreampak, LLC*, 303 F. Supp. 2d 516, 521-23 (D.N.J. 2003) (denying injunction where plaintiff's proposed order was "overbroad and vague" and plaintiff had repeatedly "shifted" its attempted identifications).

10

Courts uniformly deny injunction demands where the plaintiff either fails to give precise delineation of the trade secrets or seeks overbroad relief.[2]

Givaudan's overbroad demand is not only legally baseless, it is contrary to the admitted record in the case. The May 4, 2009 Order required Givaudan to identify the content of the formulas limits the case to these alleged matches. There is not basis under the law or in fact for Givaudan to seek relief beyond those alleged matches. In the event the Court does not elect to dismiss the entire case against Mane outright at this time, the law is clear that scope of the case must be limited to the material actually alleged as being misappropriated—and no broader.

---

[2] See *Corning Inc. v. Picvue Elec., Ltd.*, 365 F.3d 156 (2d Cir. 2004) (remanding trade secret injunction as too vague under Rule 65 because it was impossible to discern from the order what information was subject of the injunction); *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 956 (Fed. Cir. 1984) (affirming injunction denial where plaintiff "insist[ed] on postponing identification or description of such a broad universe of thousands of unidentified trade secrets"); *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1121-22 (Fed. Cir. 1996) (trade secret inunctions held overbroad under Rule 65(d) for failure to specify exactly what information was barred from use); *American Can Co. v. Mansukhani*, 742 F.2d 314, 333 (7th Cir. 1984) (same); *E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1114-15 (8th Cir. 1969) (same); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522-23 (9th Cir. 1993) (same); *Microstrategy, Inc. v. Business Objects*, S.A., 331 F. Supp. 2d 396, 431 (E.D. Va. 2004) (holding that a plaintiff's proposed permanent injunction was "too broad" in scope and limiting the injunction to "specific documents identified as trade secrets"); *Southwest Research Inst. v. Keraplast Tech., Ltd.*, 103 S. W.3d 478, 483 (Tex. Ct. App. 2003) (vacating injunction where plaintiff broadly claimed that everything defendant learned from plaintiff was secret).

11

### III.   CONCLUSION

For the foregoing reasons, Mane respectfully requests that the Court dismiss Givaudan's claims of trade secret misappropriation and demand for injunctive relief against Mane with prejudice.

Respectfully submitted,

/s/ *JOHN D. SHEA*
JOHN D. SHEA, ESQ.
LITCHFIELD CAVO LLP
1800 Chapel Avenue West
Cherry Hill, New Jersey  08002
(856) 382-2274

THAD M. BARNES, ESQ.
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800,
Louisville, KY 40202-3352
(502) 681-0614
COUNSEL FOR MANE USA, INC.

March 11, 2013

12