NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GIVAUDAN FRAGRANCES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>JAMES KRIVDA and MANE USA, INC.,<br><br>Defendants. | Civil Action No.: 08-4409 (PGS)<br><br>**MEMORANDUM & ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on a motion for summary judgment filed by defendant Mane USA Inc. ("Mane") (ECF No. 239). Plaintiff Givaudan Fragrances Corporation ("Plaintiff" or "Givaudan") brings this action against Defendants Mane and James Krivda ("Krivda") alleging that Krivda stole 616 of Givaudan's fragrance formulas[1], which Givaudan contends are trade secrets, before he left his employment at Givaudan to join the ranks of Mane in 2008. The motion for summary judgment before the Court concerns Givaudan's misappropriation of trade secrets claim against Mane and request for injunctive relief. Mane presents two grounds for summary judgment. First, Mane argues that due to Givaudan's failure to give it immediate notice in 2008 of the content of the 616 formulas, Mane has been unable to

---

[1] While the number of allegedly misappropriated trade secrets has varied throughout the course of this case, at Oral Argument on June 12, 2013 and in their supplemental briefing on Mane's motion for summary judgment, the parties consistently referred to 616 as the total number of formulas comprising the misappropriated trade secrets in this case.

1

defend, and Givaudan is unable to sustain its burden in establishing that Mane intentionally misappropriated Givaudan's trade secrets. Essentially, Mane argues that Givaudan's failure to provide it with adequate notice of the allegedly misappropriated trade secrets negates the requisite element of intent. Second, Mane asserts that even if Givaudan has a viable misappropriation of trade secrets claim against it, Givaudan's delay in notifying Mane of the formulas at issue and failure to produce supporting evidence precludes the broad injunctive relief that Givaudan seeks. After careful consideration of the parties' submissions, and after holding oral argument on June 12, 2013, the Court grants Mane's motion in part and denies it in part for the reasons set forth below.

I.

Since the parties are well acquainted with facts and procedural history, the Court will only set forth those facts relevant to its decision.

Krivda worked at Givaudan until May 2008. ((Certification of John D. Shea ("Shea Cert."), Ex. A, 13:19-22, 262:2-4). Previously, Krivda worked at Mane as a perfumer from 1993 to 1995. (Shea Cert., Ex. B). Mane offered Krivda a job in April 2008 (Shea Cert., Ex. C), and Krivda resigned from Givaudan and accepted Mane's offer at that time. (Shea Cert., Ex. A, 34:2-21). Krivda was hired at Mane as Vice President, Senior Perfumer. (Shea Cert., Ex. A, 20:18-24, 37:11-12).[2] Krivda executed a confidentiality agreement with Mane on May 5, 2008, which states, in part, that Krivda pledges that he does not possess "any confidential information or documents belonging to others, and will not use, disclose to MANE, or induce MANE or its

---

[2] Givaudan disputes the exact date Krivda started working at Mane. (*See* Givaudan's Response to Mane's Statement of Undisputed Facts, ¶ 4 (ECF No. 258-1)). However, this is not material to Mane's motion for summary judgment.

2

agents to use, any such information or documents during my employment." (emphasis in original)(Shea Cert., Ex. D).

After Krivda terminated his employment with Givaudan, Givaudan noticed "suspicious" printing of 616 formulas that Krivda allegedly took prior to leaving his position at Givaudan, and notified Krivda of same.

On June 10, 2008, Givaudan's in-house counsel sent Krivda another letter copying the President of Mane, Michel Mane. The letter demanded that Krivda and Mane:

> Immediately take all appropriate measures to remedy this flagrant misconduct including, at the very minimum, by: (1) returning to Givaudan all of Givaudan's formulas (including all copies) and certifying that all electronic versions have been permanently deleted from your and Mane's databases; (2) returning all other Givaudan confidential documents and other materials in your and Mane's possession; and (3) otherwise ceasing the use of any Givaudan confidential information for any purpose. *Id.*

Deborah Knighton, Vice President, Human Resources of Mane responded. She stated that Krivda "has told Givaudan and has told Mane that he has not provided Mane with any Givaudan proprietary information. Based upon Mr. Krivda's statement, among other reasons, "Mane has no reason to believe it has received or will receive Givaudan proprietary information from Mr. Krivda."

On June 26, 2008, Krivda's counsel wrote to Givaudan's in-house counsel that "[t]he simple response to your manifold questions is that Mr. Krivda has not misappropriated any propriety business information from Givaudan, and he has not provided any such information to Mane USA"; but also implored Givaudan, "[i]f you are willing to provide us with the names and numbers of the formulas Givaudan asserts were printed on [April 16-18 and 21-25] we may be able to provide a more detailed response." *Id.*

On September 3, 2008, Givaudan simultaneously filed a Complaint and a motion for a preliminary injunction and expedited discovery against Krivda. (ECF No. 1). The Complaint asserted that "Krivda, without authorization. . . . accessed from the Company's protected, formula database, printed, and . . . removed from the premises more than **650** of Givaudan's fragrance formulas." *Id.* (emphasis in original).

As the matter went into the discovery phase, Mane and Krivda requested that Givaudan identify the misappropriated items. By letter to Krivda's counsel dated September 29, 2008, Givaudan disclosed that there was a "print list" identifying the name of each formula that allegedly Krivda improperly accessed. The print list contains the name of each formula, an identification number and the date on which it was printed by Krivda. Each allegedly printed formula appears on a multi-page list as shown below:

KRIDVA James   KVX00491   JAK 08-4091-100 CULTURE CLUB   2008/05/02 8:39:46am   >>Print

There are 40 separate formulas placed on each of the 48 pages of the list. Since the list does not detail the ingredients or the amounts of each ingredient in each formula, it is difficult to determine whether Mane has an identical product, and according to Krivda and Mane, the product name (Culture Club) does not provide insight as to the precise content of the formulation.

Over the last several years there have been ongoing (at times contentious) discovery issues regarding this matter. Hence, the issues of whether and when Givaudan will supply Mane and Krivda with the ingredients for each allegedly misappropriated formula has been disputed. Givaudan argues that their formulas are their own trade secrets, and need not be disclosed. Despite Givaudan's position, sporadically (between July 8, 2010 and June 12, 2013) Givaudan

identified 34 formulas out the 616 alleged formulas that match Mane products. At one point, Givaudan changed its position and offered to produce the ingredients of the 616 formulas; but Givaudan imposed peculiar safeguards in order to the protect the formulas. The safeguards included:

1. Formulas would be displayed on a computer at Plaintiff's law firm;
2. Defense counsel will be present during the inspection; and
3. no copying or taking notes was permitted.

Obviously, the requirement against copying or notetaking severely and adversely impacted any reasonable disclosure of discovery. No one could possibly memorize a set of formulas and then attempt to compare and match them with Manes' products. As such, Givaudan has not disclosed the misappropriated formulas.

The trial was scheduled to begin on November 1, 2013; but now has been delayed until January 2, 2014. A final pre-trial order is in the process, and as is the practice, the final pre-trial order will be the controlling document for the admission of evidence. Fed. R.Civ. P. 16.

## II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all

justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

**III.**

A misappropriation of trade secrets claim brought in federal court is governed by state law, not federal common law. *Rohm and Haas Co. v. Adco Chemical, Co.*, 689 F.2d 424, 429 (3d Cir. 1982) (internal citations omitted). To establish a trade secret misappropriation claim against a subsequent employer, a former employer has the burden to demonstrate: "(1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by the employee in breach of the confidence, (4) acquired by the competitor with knowledge of the

6

breach in confidence, and (5) used by the competitor to the detriment of the plaintiff." *Id.* at 429-30 (internal citations omitted). The plaintiff must also show that it took precautions to maintain the secrecy of the trade secret. *Id.* at 430 (internal citations omitted). "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* at 431 (internal citation omitted).

"It is hornbook law that 'the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret.'" *Sutra, Inc. v. Iceland Express, EHF*, 2008 U.S. Dist. LEXIS 52849 at *8 (D. Mass. July 10, 2008) (quoting Charles Tait Graves and Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 *Nw. J. Tech. & Intell. Prop.* 68, 69 (2006)). Mane posits that Givaudan has no basis to proceed with its claims for misappropriation of trade secrets and injunctive relief against Mane, as Givaudan's claim are barred by Givaudan's failure to disclose in a timely manner substantive notice of the content of the 616 formulas. Mane contends that the plaintiff's burden in a trade secret misappropriation case "includes describing the alleged trade secret with adequate specificity to inform the defendants what it is alleged to have misappropriated. Most have ruled that specificity is required." *Sit-up Ltd. V. IAC/Interactive Corp.*, 2008 U.S. Dist. LEXIS 12017, at * 32-34 (S.D.N.Y. Feb. 20, 2008). Generally, a plaintiff in a misappropriation of trade secrets case must identify with precision the trade secrets at issue at the outset of the litigation. *Hill v. Best Med. Int'l, Inc.*, 2010 U.S. Dist. LEXIS 62726 (W.D. Pa. June 24, 210). A plaintiff must provide at the outset of discovery "a description of the trade secrets at issue that is sufficient to (a) put the defendant on notice of the nature of plaintiff's claims and (b) enable the defendant to determine the relevancy

of any requested discovery concerning its trade secrets." *AutoMed Techs., Inc. v. General Foods Corp.*, 160 F.Supp.2d 915 (N.D. Il. 2001); *see also Struthers Scientific & Intern. Corp. v. General Foods Corp.*, 51 F.R.D. 149, 151-52 (D. Del. 1970). Mane maintains "specificity is required before the court so that the defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and non-secret information, and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation." *Sit-up*, 2008 U.S. Dist. LEXIS 12017 at * 32-34.

According to Mane, despite its repeated requests for specificity and Givaudan's strict disclosure obligations under the law, Givaudan has never produced all of the 616 formulas it alleges Krivda printed. Mane argues that, to this day 1) it has no idea what the alleged misappropriated formulas are; 2) it did not receive timely or sufficient notice from Givaudan; 3) the failure to provide Mane with timely and sufficient notice precludes the finding of intent; and 4) Givaudan's delay and refusal to disclose its proof shows that Givaudan fails to meet its strict burden of establishing notice and intentional misuse.

The Court partially agrees with Mane that Plaintiffs have failed to give specific notice of the formulas allegedly stolen by Kridva. Only 34 formulas have been identified. In *Hill*, the Court held that Plaintiff's four-year failure and delay in giving defendant precise notice of the material allegedly copied was fatal to the claims. The court noted that, regardless of what *Hill* knew, BMI failed to identify a single trade secret until about four years later. *Hill II*, 2011 U.S. Dist. LEXIS 123845 at *28-29. This was dispositive because "to establish misappropriation of a trade secret, the plaintiff must show that the defendant used or disclosed information that it knew or had reason to know was a trade secret and that the defendant acquired such information by

8

improper means." *Id.* at *39. BMI's delay in giving notice foreclosed any finding that Accuracy had the requisite knowledge or intent to misappropriate. *Id.* at *28-29[3].

The law does not "impose on [subsequent employers] like Mane an affirmative duty to undertake an inquiry, independent of the information given to them by [the employee] as to the source" of the employee's work product.. *Fox v. Millman*, 210 N.J. 401, 425-27 (2012) An employer is permitted to rely on the representations of the employee that no breach occurred without any further duty of inquiry. *Id.* at 427. The employee's contractual or fiduciary "duty to safeguard confidential information" is not imputed to subsequent employers. *Id.* The onus is on the former employer to come forward and put the current employer on specific notice of trade secret protection, or else lose that protection. This burden includes immediately describing the alleged trade secret with precision so as to inform the defendant exactly what the plaintiff is alleging to have been misappropriated. A plaintiff must make this disclosure at the outset of the litigation, if not before.

The Court finds summary judgment barring all formulas except for the 34 that have been identified. The laws of misappropriation requires prior disclosure and none except for the 34 formulas has occurred here in a substantive manner. In addition, at this late date in a trial process (the case is nearly five years old), the time allotted for discovery has expired, and full disclosure should have occurred by now.

---

[3] The *Hill* case has three discussions. *Hill v. Best Med. Int'l, Inc.*, 2010 U.S. Dist. LEXIS 62726 (W.D. Pa. June 24, 2010) ("*Hill I*"); 2011 U.S. Dist. LEXIS 123845 (W.D. Pa. October 24, 2011) ("*Hill II*"); 2011 U.S. Dist. LEXIS 147853 (W.D. Pa. December 22, 2011) ("*Hill III*").

Givaudan argues that since the outset of the case that it has noticed both Krivda and Mane that 616 formulas had been misappropriated, and that the "print lists" served as sufficient notice of its claims. However, the print lists lack specificity as to the exact trade secrets that Givaudan purports to have been misappropriated. For example, the print list does not disclose any ingredients or amounts thereof; and the name of the product (Culture Club, see p. 4) is not sufficient to determine the specific formulation about a trade secret.

Alternatively, Givaudan argues that the 34 formulas disclosed give rise to circumstantial evidence from which the jury may circumstantially find that 616 formulas were misappropriated to Mane. That is, the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place." *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985). Givaudan asserts that the jury may reach a verdict based on such direct and circumstantial evidence, including, without limitation the circumstances surrounding Mane's recruitment of Krivda, the rate at which Krivda populated Mane's library with formulas, Mane's use of Krivda to solicit Givaudan customers, the 34 matched formulas identified by Dr. Nilsen, the similarities in name between matched Givaudan and Mane formulas, and Krivda's alleged alteration of formula names and ingredients to avoid detection which Mane discovered. Givaudan also argues that said contention shows sufficient circumstantial evidence that Krivda stole all 616 trade secrets at issue. Despite these assertions, the Court finds that such broad contentions are speculative and remote. Here, Givaudan could have disclosed the specification of each formula, and then appropriate discovery procedures could have precisely identified whether Mane had received any or all of the allegedly purloined formulas. Circumstantial evidence is inappropriate where the outcome is remote, and it would have been largely avoided by the proper disclosure.

## VI.

In summary, the Court notes that it agrees with Mane that Givaudan must provide it with timely and sufficient notice of the trade secrets at issue. Sufficient notice entails a description or identification of the allegedly misappropriated trade secrets with adequate specificity or precision so as to inform the defendant what the plaintiff is alleging he misappropriated. *Sit-up Ltd.*, 2008 U.S. Dist. LEXIS 12017, at * 32-34; *Hill I*, 2010 U.S. Dist. LEXIS 62726 at * 9-10, * 14-16; *Hill II*, 2011 U.S. Dist. LEXIS 123845 at * 17-18, * 23; *AutoMed Techs*, 160 F.Supp.2d at 926.

With respect to the 34 formulas, as noted above, Givaudan has provided Mane with the ingredient list and percentages for these formulas. As such, the Court finds that Givaudan has provided Mane with sufficient notice of these 34 allegedly misappropriated trade secret formulas, as the ingredient list and percentages of these formulas provides a description that is adequately specific and informs Mane what trade secrets Givaudan is alleging that Mane misappropriated. While Mane makes much of the timeliness, or lack thereof, of Givaudan's disclosure of the ingredient list and percentages of these formulas, the Court does not find the timeliness, or lack thereof, of Givaudan's production to be a viable ground upon which to grant summary judgment. The Court finds that the content of these 34 formulas was sufficiently timely. As such, the Court denies Mane's motion for summary judgment as to the 34 formulas.

The Court now turns to the remaining 582 formulas for which Givaudan has not produced the precise formulation. The Court disagrees with Givaudan as to the sufficiency of its June 10, 2008 correspondence to Mane and the "print list" provided to Mane in October 2011. The Court finds that these disclosures do not constitute sufficient notice of the trade secrets. For instance, the June 2008 letter does not identify the allegedly misappropriated trade secrets with any

11

specificity; and the print list as stated above is insufficient.[4] As Mane notes, the name of the formula is not the protected secret and it conveys nothing to Mane with respect to the subject matter that Givaudan is claiming that it owns or that Mane has allegedly misappropriated.

In addition, Givaudan's offer to Mane in May 2012 to allow inspection of all 616 formulas lacked any meaningful opportunity to review the formulas since Mane's representation it could not copy or write down the alleged formulas. This inspection failed to provide Mane with sufficient notice of the trade secrets that were allegedly misappropriated.

Since Givaudan has never produced the ingredient list for these 582 formulas and this case is five years old and scheduled for trial, the Court finds that Givaudan has failed to provide Mane with timely and sufficient notice as to these allegedly misappropriated trade secrets. The Court fails to see how any of the outstanding discovery set forth in Givaudan's counsel's Rule 56(d) Declaration (ECF No. 258-2) or Judge Arpert's February 15, 2013 Order (ECF No. 246) has any bearing on the legal issue before this Court of whether Givaudan provided Mane with timely and sufficient notice of the allegedly misappropriated trade secret formulas.

Accordingly, the Court grants Mane's motion for summary judgment as to the 582 formulas for which Givaudan has not produced the ingredient lists and percentages.

Having granted Mane's motion for summary judgment with respect to the 582 formulas for which Givaudan failed to produce the ingredient lists and percentages and denied Mane's motion for summary judgment as to the 34 formulas for which Givaudan has produced the formulation, the Court finds that the motion to strike the injunctive relief is denied. If a jury finds misappropriation of trade secrets of 34 formulas, any injunctive or other equitable relief may be ordered by the Court.

---

[4] The print lists provided to Krivda in September and October 2008, even if Krivda shared them with Mane, are insufficient for the same reasons as the unredacted October 2011 print list.

**ORDER**

This matter having come before the Court on a motion for summary judgment filed by defendant Mane USA Inc. ("Mane") (ECF No. 239). For the reasons set forth in the accompanying memorandum;

It is this 25th day of October, 2013

ORDERED that Mane's motion for summary judgment as to the 582 formulas for which Givaudan has not produced the ingredient lists is granted; and it is further

ORDERED that Mane's motion for summary judgment as to the 34 formulas for which Givaudan has produced the ingredient lists is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.
