NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **GIVAUDAN FRAGRANCES CORPORATION,** | : | Civil Action No.: 08-4409 (PGS) |
| **Plaintiff,** | : | |
| v. | : | MEMORANDUM OPINION AND ORDER |
| **JAMES KRIVDA, et al.,** | : | |
| **Defendants.** | : | |

**ARPERT, U.S.M.J.**

## I. INTRODUCTION

This matter comes before the Court on a Motion by Plaintiff Givaudan Fragrances Corporation ("Plaintiff" or "Givaudan") which seeks to (1) compel Defendant Mane USA, Inc. ("Mane") to produce documents responsive to Givaudan's Supplemental Requests for the Production of Documents; (2) compel Mane to produce documents responsive to the Court's February 15, 2013 Order; and (3) impose sanctions on Mane for necessitating the Motion [dkt. no. 364]. Mane has filed opposition [dkt. no. 389]. For the reasons stated herein, Givaudan's Motion is **DENIED**.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Since the parties are well acquainted with the facts and procedural history of this case, the Court will only set forth those facts relevant to its decision. A more complete recitation of the facts is contained in the Memorandum and Order of the Honorable Peter G. Sheridan, U.S.D.J., dated October 25, 2013 [dkt. no. 453].

The present dispute stems from Mane's objections and responses to Givaudan's Supplemental Requests for the Production of Documents, which Givaudan served on Mane on April 29, 2013. According to Givaudan, these Requests seek documents that are relevant to its damages claims. See Givaudan's Brief, at p. 6 [dkt. no. 364]. Unsatisfied with Mane's initial responses, Givaudan requested permission from the Court to file a motion to compel more responsive documents and information. See Letter from Deborah S. Brenneman, Esq., dated June 13, 2013 [dkt. no. 314].

In response, Mane proposed a compromise to resolve the dispute. See Letter from John D. Shea, Esq., dated June 18, 2013 [dkt. no. 326]. Under an "Attorney Eyes Only" designation, Mane agreed to produce (1) business records showing the costs of goods for all of Krivda's sold formulas and (2) P&L summaries for the company as a whole and the Fine Fragrance Division from 2007 to the present. Id. On July 2, 2013, the Court adopted Mane's compromise, and Mane was directed to produce the responsive documents by July 10, 2013. See Letter Order from the Hon. Douglas E. Arpert, U.S.M.J., July 2, 2013, at p. 1 [dkt. entry 336]. The Court also notified Givaudan that it "need not file a formal motion to compel." Id. Subsequent to the Court's Order, Mane made a supplemental document production. See Mane's Opposition Brief, at p. 3 [dkt. no. 389].

On July 30, 2013, Givaudan filed a Motion for Reconsideration, again asking the Court's permission to file a motion to compel Mane to produce additional documents responsive to Givaudan's Supplemental Requests. See Letter from Deborah S. Brenneman, Esq., dated June 26, 2013 [dkt. no. 331]. The Court granted the Motion for Reconsideration and permitted Givaudan to file the present Motion to Compel [dkt. no. 359]. In due course, Givaudan filed its

Motion [dkt. no. 364] and Mane submitted its opposition [dkt. no. 389].

Subsequent to the filing of Givaudan's Motion, Judge Sheridan issued an Order granting Mane's Motion for Summary Judgment with respect to 582 of the 616 formulas that Givaudan claims Mane misappropriated in this matter.  See Memorandum and Order of the Hon. Peter G. Sheridan, U.S.D.J., October 25, 2013 [dkt. no. 453].  As a result, only 34 formulas remain at issue in this case.  Id.

Thereafter, the Court asked the parties to submit their positions with respect to the impact of Judge Sheridan's Order on the outstanding motions, including the present Motion to Compel (which was held in abeyance pending Judge Sheridan's Order).  The parties submitted letters outlining their positions, which the Court has carefully considered.  See dkt. nos. 489, 494, 495.

### III.  DISCUSSION

#### A.  Legal Standards

Pursuant to FED. R. CIV. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action."  See also Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).  At the same time, the Federal Rules provide that the Court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that:

> (i)      the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)      the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii)      the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties'

> resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

FED. R. CIV. P. 26©.  Indeed, "the Court has a responsibility to protect privacy and confidentiality interests" and "has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible . . . while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." Schmulovich v. 1161 Rt. 9 LLC, Civ. No. 07-597, 2007 WL 2362598, at *1 (D.N.J. August 15, 2007); see also Pearson, 211 F.3d at 65.

### B. Motion to Compel Documents Responsive to Supplemental Requests

In the present Motion, Givaudan moves under FED. R. CIV. P. 37(a) to compel Mane to produce additional information and documents responsive to its Supplemental Document Requests, which it served on April 29, 2013. See Givaudan's Brief at p. 6. The Court will first consider Givaudan's general objections to Mane's responses, and then evaluate each alleged deficiency.

#### 1. General Principles

While Givaudan enumerates specific objections to Mane's responses, it also sets forth certain thematic contentions concerning Mane's productions.  Namely, Givaudan asserts that Mane has purposely withheld responsive documents and has strategically filtered underlying data for self-serving purposes in this litigation.  See, e.g., Givaudan's Brief at pp. 1, 4, 9, 11.

The Court disagrees with the principles underlying Givaudan's arguments.  As an initial matter, Givaudan's ubiquitous allegations of Mane's misconduct throughout the discovery process ring hollow considering Givaudan's own actions in this case. On December 10, 2012, the

4

Court directed the parties to file all motions related to outstanding discovery issues, and the parties indeed participated in significant motion practice on December 14, 2012. See dkt. nos. 207-210. Discovery disputes should have been resolved at that time.

This litigation has been ongoing for five years. Givaudan only sought these "critical" damages documents on April 29, 2013, with a June 12, 2013 trial date then pending. Givaudan's argument that damages discovery was to be conducted at a later point in this action finds no support. Moreover, the Requests were untimely when served, given that discovery requests were originally to be served by March 31, 2011 under the then-existing Scheduling Order [dkt. no. 115].

Substantively, Givaudan's Supplemental Requests reach beyond the scope of this case, especially as narrowed by Judge Sheridan's recent Order. Indeed, the Requests seek expansive, novel discovery of Mane's sensitive competitive information that adds no apparent value to Givaudan's damages presentation. As such, Mane did not act improperly in objecting to the Requests. As Mane noted, the scope of discovery taken from the defendant must be limited to the specific trade secrets which were allegedly misappropriated. See, e.g., Hill v. Best Med. Int'l, Inc., 2010 WL 2546023, at *3 (W.D. Pa. June 24, 2010) ("Hill I") (Plaintiff must provide "a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets"); Hill v. Best Med. Int'l, Inc., 2011 WL 5082208, at *6 (W.D. Pa. Oct. 25, 2011) ("Hill II") (Granting summary judgment after denying plaintiff's request for discovery from the defendant, noting "this decision was consistent with those of other courts which have required the plaintiff first to identify the trade secrets in

5

question before it is permitted discovery into the defendant's confidential information."); AutoMed Techs., Inc. v. Eller, 160 F. Supp. 2d 915, (N.D. Ill. 2001) (A plaintiff is "required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets") (quoting Engelhard Corp. v. Savin Corp., 505 A.2d 30, 33 (Del. Ch. 1986)). With respect to 582 of the formulas Givaudan accused Mane of misappropriating, Judge Sheridan found that Givaudan has not set forth its trade secrets with particularity. Accordingly, Givaudan cannot obtain any additional discovery with respect to those formulas.

Contrary to Givaudan's assertions, Mane has not attempted to skirt its discovery obligations in this matter. Indeed, Mane has produced "a Microsoft Access Database containing specifically requested categories of detailed information regarding all of Krivda's formula creations through October 2011, and hundreds of thousands of pages of documents from Mane's restored electronic data regarding Krivda's communications, customer submissions, and records relating to other key identified custodians," a production that exceeded 150,000 documents regarding thousands of formulas. See Mane's Opposition Brief, at p. 2 [dkt. no. 389]. In addition, in response to the December 14, 2012 motions, Mane produced extensive documentation, including the "invoices and sales records for all of Krivda's sales and sales of Krivda's derivative formulas from the date of Krivda's employment at Mane on May 5, 2008 through February 18, 2013." Id. at pp. 17-18. Earlier in the discovery process, Mane produced additional documents relating to damages, "including customer lists, customer communications, ingredient lists and most significantly, Krivda's formulas." Id. at p. 18.

Even though Mane objected to Givaudan's Supplemental Requests for the Production of

Documents, it proposed a compromise to resolve the dispute, which the Court ultimately adopted. See dkt. nos. 326, 336. As part of that compromise, Mane produced business records showing the costs of goods sold for sales of all of Krivda's formulas, as well as the P&L records for the total company and Fine Fragrance Division from 2007 to the present. Thus, Mane produced the sales and cost data for Krivda's sales and the sales of Krivda's derivative formulas. Givaudan has also deposed Mane witnesses, including its Chief Financial Officer, Tathiana Remick, and, accordingly, has had ample opportunities to test the veracity of Mane's discovery.

In sum, while Givaudan may still have discrepancies with Mane's objections or productions, that alone is insufficient to assert that Mane has purposely withheld responsive discovery. Both parties have vigorously contested multiple discovery issues throughout this matter, and the Court finds no bad faith on Mane's part. Indeed, Mane has produced extensive discovery throughout this matter. Moreover, Givaudan's Supplemental Requests are overly expansive, especially in light of Judge Sheridan's Order. When narrowed to their appropriate and relevant scope, Givaudan either (1) already possesses the requested information, (2) can obtain the requested information from an available source, or (3) has had ample opportunity to obtain such information. At this point, five years into the case, the burden of allowing the expansive, repetitive discovery Givaudan seeks heavily outweighs its benefit.

2. **Givaudan's Specific Requests**

In its Motion, Givaudan enumerates specific objections to Mane's responses to its Supplemental Requests. The Court will consider each Request in turn.

**Requests 1 and 2**

Givaudan asserts that Mane has not sufficiently responded to its Supplemental Requests 1

and 2. Those requests state:

> <u>Document Request 1</u>: All financial statements and financial data compilations for the years 2006 to the present, including, but not limited to, annual and quarterly financial statements, fragrances and consumer fragrances, profit and loss statements, balance sheets, income statements, statements of cash flows, sales records, corporate tax returns and all corporate financial documents prepared by or filed on behalf of Mane, Inc. And all of its divisions, affiliates, subsidiaries and related companies.
>
> <u>Document Request 2</u>: All financial statements of Mane for the years 2007 through the present which mention, refer, relate to or include any financial information relating to fine fragrances or consumer fragrances, including, but not limited to, annual and quarterly financial statements, internal management financial statements, reporting packages, and/or presentations, profit and loss statements, balance sheets, income statements, statements of cash flows, sales records, corporate tax returns and all corporate financial documents prepared by or filed on behalf of Mane, Inc. and all of its affiliates, subsidiaries and related companies.

Givaudan relies on its damages expert, Richard J. Gering, Ph.D. ("Dr. Gering"), who contends that documents responsive to these Requests "present Mane's overall financial profitability and trends in Mane's business . . . before and during Mane's asserted use of Givaudan's trade secrets." <u>See</u> Givaudan's Brief, at p. 7. According to Dr. Gering, this information is relevant to Givaudan's damages presentation because it "provides insights into the potential impact the use of Givaudan's trade secrets have on Mane's revenue and profitability." <u>Id.</u>

In its initial responses, Mane objected to Requests 1 and 2 on the grounds that they are "overly broad, unduly burdensome . . . and not reasonably calculated to lead to the discovery of admissible evidence." <u>See</u> Mane's Responses to Supplemental Document Requests 1 and 2 [dkt. no. 314]. In the course of discovery, Mane has produced the sales records relating to any fragrance created by Krivda and sold by Mane during his employment at Mane, and the sales records relating to any Krivda derivative. Mane's CFO, Tathiana Remick, certified to the completeness and accuracy of these records. Moreover, Givaudan's counsel deposed Ms.

Remick and she testified that the sales records are complete and accurate. Mane produced additional documents responsive to this Request as part of its compromise.

The Court finds that Mane's responses to these Requests are sufficient. Givaudan's own expert, Dr. Gering, states that documents responsive to Requests 1 and 2 are relevant because they "provide insights" into the "potential" impact the purported use of Mane's trade secrets had on Mane's revenue and profitability. This justification is far too tenuous for the Court to direct the large-scale production Givaudan seeks, which entails massive amounts of sensitive information regarding formulas not even at issue. Especially in light of Judge Sheridan's Order, the net Givaudan attempts to cast is too broad. To the extent Mane must respond, the Court finds that Mane's prior productions, the Declaration of Ms. Remick, and the depositions that have taken place in this matter, adequately address the proper scope of these Requests.

**Requests 3 and 4**

Givaudan also argues that Mane has insufficiently responded to its Supplemental Requests 3 and 4. Those requests state:

> Request 3: All documents containing financial information from 2007 through the present for the fine fragrances and consumer fragrances including, but not limited to: revenues; cost of goods sold; gross profit; selling general and administrate; marketing; operating profit; research and development; and net income.
>
> Request 4: All documentation containing financial information from 2007 through the present for product line extension sales by customer and year including, but not limited to: revenues; cost of goods sold; gross profit; selling general and administrative marketing; operating profit; research & development; and net income.

With respect to Request 3, Dr. Gering argues the documents are "required to analyze the costs (direct material, direct labor, and all other costs) that are directly attributable to the manufacture and sale of fine fragrances." See Givaudan's Brief at p. 11. Givaudan is dissatisfied with the

P&L summaries Mane produced as part of its compromise because according to Givaudan these documents are only summaries and involve the filtering of data for Mane's own benefit.

In addition to the objections asserted with respect to Requests 1 and 2, Mane maintains that the P&L statements "show, inter alia, sales, net sales, costs of materials, gross profit, gross margin, fixed direct costs, income/loss from operations, as well as other information." Mane's Opposition Brief, at p. 12. As noted above, Mane has also produced the sales records relating to any fragrance created by Krivda and sold by Mane, and the invoices relating to Krivda derivatives.

Request 4 seeks the same information as Request 3, except for "private line extension sales." As Mane noted in its Opposition, while Ms. Remick testified that she could identify financial information for product line extensions, Mane financials are kept and tracked as a formula whole and not broken up by line extensions. See Mane's Opposition Brief, at p. 13-14 . Therefore, Givaudan's Request is misplaced.

**Requests 7 and 8**

Givaudan maintains that Mane's production also failed to adequately respond to its Supplemental Requests 7 and 8. Those requests state:

> Request 7: Documents from 2007 through the present mentioning, referring or relating to the costs and related margins to develop a fragrance from its infancy to commercialization.
>
> Request 8: Documents from 2007 through the present mentioning, referring or relating to the amount of time and expenses to develop a fragrance.

Dr. Gering asserts that the documents responsive to Requests 7 and 8 are "required to understand Mane's time and expenses to create a formula for a fragrance," which is relevant to "Mane's cost

savings" resulting from its purported use of Givaudan's trade secrets. See Givaudan's Brief at p. 13.

Mane objected that these Requests seek sensitive, confidential, proprietary information from Mane that is not directly related to any of the 34 alleged matches. Especially given Judge Sheridan's Order, which substantially narrowed the scope of this case, the Court finds that Givaudan's Requests 7 and 8 are overly broad, and would provide Givaudan, Mane's competitor, with sensitive proprietary information that is unnecessary for Givaudan's damages presentation. With respect to Givaudan's "cost savings" argument, Ms. Remick explained that Mane does not maintain information on the research and development costs of fragrances in the ordinary course of business. See Mane's Opposition Brief, at p. 15 [dkt. no. 389]. Thus, Givaudan's arguments are misplaced.

Givaudan also claims that it will be prejudiced unless it receives the requested information because it will not be able to show "the full extent of Mane's possession and use of Givaudan's stolen formulas, which have financially benefitted Mane's business . . . [and] it will have less information to prove that Mane did not have the ability or capability to create the volume of fragrance formulas that Krivda was able to enter into Mane's database in a short amount of time . . ." See Givaudan's Brief, at p. 13. The Court disagrees. Mane has produced a sales chart identifying the sale of each Krivda and Krivda derivative formula, and has also produced "the sales records for each Krivda and Krivda derivative formula ever commercialized." See Mane's Opposition Brief, at p. 15. In sum, the Court finds that Mane has sufficiently fulfilled its obligations to respond to these requests.

**Request 9**

Givaudan also asserts that Mane's production does not adequately respond to its Supplemental Request 9. That request states:

> Request 9: Documents from 2007 through the present detailing by year the number of perfumers, the number of fragrances/projects they worked on, each perfumers' salary and other costs of employment such as bonuses and benefits.

Dr. Gering contends that the documents "are required to understand whether or not Mane had the available capacity, expertise, etc. to develop the Givaudan fragrances internally." See Givaudan's Brief at p. 13. In addition to its objections to Requests 7 and 8, Mane asserted that this Request requires the production of confidential and personal information of other Mane employees and has no connection to the allegations against Mane or Krivda. See Mane's Brief, at p. 15 [dkt. no. 389]. The Court agrees, and finds that Givaudan is not entitled to this information, which does not concern Krivda or the allegations at issue in this litigation.

**Request 11**

In addition, Givaudan maintains that Mane has not sufficiently addressed its Supplemental Request 11. That request states:

> Request 11: All documents which mention, refer or relate to any cost information relating to performing gas chromatography from 2007 through the present including, but not limited to: personnel costs, supervisory costs, equipment costs, raw material/sample costs; overhead broken out by overhead category; and a number of fragrances purchased for analysis.

Dr. Gering contends that the documents responsive to Request 11 "are required to understand Mane's time and expenses to perform a gas chromatography for a fragrance." See Givaudan's Brief, at p. 14. Mane objects that this Request seeks overly broad, confidential and proprietary information from Mane that is not related to any of the 34 alleged matches. In light of Judge

Sheridan's Order, the Court finds that this Request is overly broad and has no relevance to the issues remaining in this litigation. Accordingly, Mane is not required to supplement its response to Request 11.

**Request 14**

Finally, Givaudan maintains that Mane's production is deficient in responding to Supplemental Request 14. That request states:

> Request 14: All documents which mention, refer, relate to or evidence the calculation of any bonus for any Mane perfumer in the years 2007 to the present, including, without limitation, data relating to sales credited to that perfumer, wins attributed to that perfumer, percentage calculations made or applied and all documents relating to any perfumer showing how the calculation was made regardless of whether those documents were ever provided to the perfumer.

Dr. Gering contends that the documents responsive to Request 14 "are required to test the completeness of the 'Mane Wins' previously produced against the bonus calculation to identify any potential wins for which Mr. Krivda was given credit through his bonus, which were not captured as a 'Mane Win.'" See Givaudan's Brief, at p. 15. According to Dr. Gering, "[t]his directly impacts the damage calculation as it relates to disgorged profits." Id.

Mane objected to the Request as it requires the production of confidential and personal information that involves any Mane perfumer and has no connection with the allegations against Mane or Krivda. Taking the Request as narrowed to Krivda, Mane has adequately responded. Indeed, Mane produced the requested information as part of Krivda's personnel records. Mane also produced its "wins" list as well as sales charts for Krivda and Krivda derivative formulas. Finally, Mane's CFO was deposed by counsel for Givaudan and testified on this topic. Accordingly, the Court finds that Mane need not supplement its response to Request 14.

### C. Motion to Compel Compliance with the Court's Order

Givaudan also seeks an Order compelling Mane to comply with the Court's February 15, 2013 Order. See Givaudan's Brief at p. 17. Givaudan's request is improper, as it did not seek leave from the Court to file a motion to compel on this issue. See dkt. no. 343. In addition, Givaudan has already filed a Motion for Civil Contempt and the Imposition of Sanctions against Mane for allegedly failing to comply with the mandates of the February 15, 2013 Order, and that motion is fully briefed [dkt. no. 271]. The Court will not endeavor at this time to resolve issues that are identical to those briefed in an earlier, pending motion.

### D. Sanctions

Givaudan also seeks sanctions for filing the present motion. See Givaudan's Brief at p. 28. Notably, Givaudan did not request permission to seek sanctions. More importantly, however, there is no basis for sanctions in connection with this Motion. As noted above in more detail, the Court disagrees with Givaudan's assertion that Mane has undertaken a dilatory course of conduct with regard to answering discovery. This case has been pending for five years, and it was Givaudan that chose to wait until April 29, 2013 to seek its "critical" damages documents. The Court has denied Givaudan's motion to compel, and thus it certainly cannot sanction Mane for necessitating the motion. Accordingly, the Court denies Givaudan's motion for sanctions.

## IV. CONCLUSION AND ORDER

The Court having considered the papers submitted and the opposition thereto, and for the reasons set forth above;

**IT IS** on this 2nd day of December, 2013,

**ORDERED** that Plaintiff's Motion to compel production and impose sanctions [dkt.

entry. no. 364] is **DENIED** as set forth above.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**